**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No. 16-cv-2304-WJM-GPG

MEGAN MCFADDEN,
LONNIE WHITE, and
ANTONIO "A.J." WHITE,

       Plaintiffs,

v.

MEEKER HOUSING AUTHORITY, a Property Management Company,
MELINDA PARKER,
MICHELLE BUCKLER,
EDY GEORGE,
ROBERT BARR, and,
STACIE KINCHER,

       Defendants.

---

## TEMPORARY RESTRAINING ORDER

---

Before the Court is Plaintiffs' Motion for Emergency Temporary Restraining

Order and Preliminary Injunction (the "Motion"). (ECF No. 5.) For the reasons

explained below, that portion of the Motion seeking a Temporary Restraining Order is

granted, and Defendants are temporarily restrained from evicting Plaintiffs Lonnie and

A.J. White ("the Whites") from their apartment.

## I. BACKGROUND

The following factual summary is taken from the declarations submitted by the

Whites in support of their Motion (ECF Nos. 5-3, 5-4):

The Whites are residents of what they call the "Karen Court apartment complex"

in Meeker, Colorado. Karen Court is owned and managed by Defendant Meeker

Housing Authority ("MHA").  Karen Court is a federally subsidized housing complex.

Given that subsidy, Plaintiff Lonnie White is permitted to pay $125 a month in rent

based on his low income.

Plaintiff A.J. White is Lonnie's son.  A.J. has two cats that help him cope with his

diagnosed illnesses of depression and Attention Deficit Hyperactivity Disorder.  A

licensed social worker has certified A.J.'s need for these companion animals.

Until June of this year, Karen Court permitted A.J. to keep his cats as an

accommodation of his disability.  In June, however, Karen Court changed its pet policy

to forbid all pets save for those certified as necessary by a medical doctor.  Karen Court

also imposed a $300 deposit per pet.  Thus, in addition to a medical doctor's note, the

Whites would need to pay $600 to keep A.J.'s two cats.

Lonnie attended an MHA board meeting and requested that the board continue

the prior accommodation of A.J.'s cats on account of his disability, and waive the

deposit given his inability to pay.  Defendant Stacie Kincher, a board member, denied

those requests.  The Whites then received a Notice of Violation from Karen Court.

In late July 2016, Karen Court tightened its new pet policy by restricting

otherwise eligible residents to one pet only, and requiring them to demonstrate their

financial capability to care for that pet.  About a week later, the Whites received another

Notice of Violation.  On August 16, 2016, the Whites received a third Notice of Violation

along with a notice that they must vacate their apartment thirty days, *i.e.*, by September

15, 2016 (today).

The Whites claim that the Rehabilitation Act of 1973 ("Rehabilitation Act"),

29 U.S.C. §§ 794 *et seq.*, and the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601 *et seq.*,

prohibit Karen Court from refusing to reasonably accommodate A.J.'s disability, or in other words, from refusing to permit him to keep his cats in light of their documented therapeutic value to his disabling illnesses.  The Whites therefore seek a temporary restraining order (TRO) to prevent their eviction.

## II.  ANALYSIS

TRO requests are frequently evaluated under the standard for a preliminary injunction: "(1) a likelihood of success on the merits; (2) a likelihood that the moving party will suffer irreparable harm if the injunction is not granted; (3) the balance of equities is in the moving party's favor; and (4) the preliminary injunction is in the public interest."  *Verlo v. Martinez*, 820 F.3d 1113, 1126 (10th Cir. 2016) (internal quotation marks omitted).

Strictly speaking, however, the only requirements for issuance of a TRO are

> (A) specific facts in an affidavit or a verified complaint clearly show[ing] that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) the movant's attorney['s] certifi[cation] in writing [regarding] any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1).

Although this is the bare minimum necessary for a TRO, courts also tend to consider less-strict versions of the likelihood-of-success inquiry, such as considering whether the movant presents "a reasonable probability of prevailing on the merits" or demonstrates "that its claims provide a fair ground for litigation."  11A Charles Alan Wright *et al.*, *Federal Practice & Procedure* § 2951 (3d ed., Apr. 2016 update) ("*Wright*

*& Miller*").  Courts also frequently consider the balance of harms and the public interest.
*Id.*  In other words, the entire preliminary injunction test usually becomes relevant,
although with more emphasis on irreparable harm than any other consideration.[1]

**A.     Immediate and Irreparable Harm**

Both Lonnie and A.J. White have submitted signed declarations describing the
harm they will face without immediate relief.  (ECF Nos. 5-3, 5-4.)[2]  Their thirty-day
notice to vacate expires today.  An eviction on Lonnie's rental history will cause him to
lose both his housing and his federal subsidy.  If so, he would likely be confined to
seeking much more expensive apartments, which he cannot afford.  Lonnie and A.J.
therefore fear that they will be homeless if they are evicted.  The Court finds that such
harm would indeed be immediate and irreparable.

**B.     Counsel's Efforts to Provide Notice**

The Whites' counsel, or counsel's agent, made attempts to call every Defendant
on September 12, 2016.  (*See* ECF No. 6.)  Some of these calls were answered, others
were not.  When the phone was answered, counsel explained the Whites' intent to file

---

[1] The TRO standard thus appears close to the Tenth Circuit's

> modified . . . preliminary injunction test when the moving party
> demonstrates that the [irreparable harm], [balance of harms], and
> [public interest] factors tip strongly in its favor.  In such situations,
> the moving party may meet the requirement for showing
> [likelihood of] success on the merits by showing that questions
> going to the merits are so serious, substantial, difficult, and
> doubtful as to make the issue ripe for litigation and deserving of
> more deliberate investigation.

*Verlo*, 820 F.3d at 1128 n.5.  The difference in the TRO context is that irreparable harm takes
precedence over all other elements.

[2] These declarations are legally equivalent to affidavits.  *See* 28 U.S.C. § 1746.

4

for a TRO.  Counsel also offered to e-mail the complaint, the motion at issue here, and related filings to those Defendants.  Counsel in fact e-mailed those filings to Defendants Kincher and Buckler, and Defendant Parker asked that documents be e-mailed to her through Defendant Kincher.  Counsel is also arranging for service of process by hand delivery to the various Defendants' addresses in Meeker.  Counsel argues that prior notice of the TRO should not be required because of how quickly the Whites might be evicted, beginning today.  The Court agrees.

## C.     Preliminary Evaluation of the Merits

As noted above, at this phase, the Court need not find that the Whites are *likely* to succeed on their claims.  And indeed, the pleadings as they currently stand give the Court some pause with respect to the question of whether the Whites have a continuing right to live in their Karen Court apartment.  In particular, MHA provided three reasons for eviction in its thirty-day notice:

1.     "[p]et policy violation";

2.     "you no longer qualify due to the age of your son and he has graduated school"; and

3.     "you have not reported your income to the Housing Authority."

(ECF No. 1 ¶ 91.)  The Whites argue that reason #1 is illegally discriminatory, and that reason #3 is pretextual because Lonnie's income verification "was not due until November 2016."  (*Id.* ¶ 92.)  But the Whites say nothing about reason #2.

Nonetheless, all the Court must find at this TRO stage is "a fair ground for litigation."  11A *Wright & Miller* § 2951.  The Court finds that standard satisfied, at a

minimum, by the Whites' retaliation claim under the FHA and Rehabilitation Act. (*See* ECF No. 5 at 16–18.)

A retaliation claim requires the following elements: (1) the plaintiff engages in a protected activity; (2) the plaintiff suffers a materially adverse action either after or contemporaneous with his or her protected activity; and (3) there is a causal connection between the protected activity and the adverse action. *Reinhardt v. Albuquerque Pub. Sch. Bd. of Educ.*, 595 F.3d 1126, 1131 (10th Cir. 2010). Here, the Whites' request for disability accommodation was a protected activity. Defendants subsequently issued their thirty-day notice to vacate the apartment, which is a materially adverse action. Finally, the temporal proximity between the protected activity and the adverse action suffices, for present purposes, to infer that Defendants issued the thirty-day notice because the Whites were requesting disability accommodations. *See Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1231 (10th Cir. 2004); *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999). Thus, on the present record, there is a fair ground for litigation regarding whether Defendants retaliated against the Whites for engaging in a protected activity.

## D.    Balance of Harms

On this record, it is obviously difficult to know what harm Defendants might face if the Whites are permitted to remain in their apartment. Nonetheless, given the Court's substituted bond requirement (see Part II.G, below), the Court finds that the harm to the Whites from being evicted outweighs the harm to Defendants from being required to maintain the Whites as tenants for the time being.

**E.      Public Interest**

Preventing homelessness is plainly in the public interest.  Accordingly, on this record presented *ex parte*, the public interest favors the Whites.

**F.      Justification for Issuance of TRO Without Notice**

This Court must "state why [this] order was issued without notice."  Fed. R. Civ. P. 65(b)(2).  The Court agrees with the Whites and their counsel that the threat of eviction is imminent, and such proceedings could begin as early as today.  Thus, immediate (temporary) relief without notice is appropriate.

**G.      Bond**

Rule 65(c) states that this court "may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Although phrased as mandatory, in practice this Court has discretion under this Rule whether to require a bond, particularly given that this is a civil rights lawsuit brought by low-income plaintiffs.  *See* 11A *Wright & Miller* § 2954 n.29 (citing public rights cases where the bond was excused or significantly reduced).

The Court finds that the Whites need not post a traditional bond.  Rather, the Whites shall be ordered to continue paying $125 a month to MHA as rent.  If MHA refuses to accept the Whites' rent payments, the Whites must hold on to that money—they may not spend it.  They must preserve it until otherwise directed by the Court.

### III.  CONCLUSION & ORDER

For the reasons set forth above, the Court ORDERS as follows:

1.   That portion of the Whites' Motion which seeks an Emergency Temporary Restraining Order (ECF No. 5) is GRANTED;

2.   That portion of the Whites' Motion which seeks a preliminary injunction remains under advisement;

3.   Defendants, as well as their officers, directors, agents, employees, successors and assigns, and all other persons in active concert or participation with them, are hereby RESTRAINED:

   a.   from evicting, or going forward with eviction proceedings against, Lonnie and A.J. White, who are residents of the Meeker Family and Elderly Housing complex, 980 Karen Court, Meeker, CO 81641;

   b.   from interfering with A.J. White's quiet and peaceful possession of his two companion cats in his apartment; and

   c.   from assessing fees on account of the cats or requiring documentation regarding the necessity of such cats;

4.   In lieu of a bond, the Whites are ORDERED to continue paying $125 in monthly rent to the Meeker Housing Authority.  If the Meeker Housing Authority refuses to accept these payments, the Whites may not spend that money, but must set it aside until they receive further direction from this Court;

5.   This Temporary Restraining Order shall remain in effect until **11:59 p.m. on September 29, 2016**, unless extended by the Court for good cause;

6.      A hearing on whether to convert this temporary restraining order into a preliminary injunction is hereby SET for **September 29, 2016 at 9:30 a.m.** in Courtroom A801 of the Alfred J. Arraj United States Courthouse, 901 Nineteenth Street, Denver, Colorado.  The parties shall familiarize themselves with the undersigned's Revised Practice Standards with regard to evidentiary hearings, and with particular emphasis on WJM Revised Practice Standard V.F.1, which requires the parties to meet and confer regarding the proposed exhibits and, to the maximum extent possible, stipulate to the authenticity and admissibility thereof; and

7.      Counsel for Plaintiffs shall serve a copy of this order upon each Defendant by e-mail (if the Defendant's e-mail address is known) and through U.S. mail (if the Defendant's postal address is known).  Counsel shall also attempt to telephone all Defendants to inform them that this order has been entered.  Counsel for Plaintiffs shall also undertake these same efforts to effect service of this Order on counsel for any one or more of the Defendant, to the extent the identity and contact information of such counsel are presently known to Plaintiffs' counsel.

Dated this 15th day of September, 2016, at 11:20 a.m., Mountain Daylight Time.

BY THE COURT:

William J. Martinez
United States District Judge

9