IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-02304-WJM-GPG

MEGAN MCFADDEN,
LONNIE WHITE, and
ANTONIO "A.J." WHITE,

      Plaintiffs,

V.

TOWN OF MEEKER, COLORADO, a municipality,
MEEKER HOUSING AUTHORITY, a governmental entity,
MELINDA PARKER, an individual,
MICHELLE BUCKLER, an individual,
EDY GEORGE, an individual, and
STACIE KINCHER, an individual,

      Defendants.

---

### PLAINITFFS' MOTION TO QUASH AND FOR SANCTIONS

---

Plaintiffs Megan McFadden, Lonnie White, and A.J. White, by and through their attorneys Laura B. Wolf, Siddhartha H. Rathod, Qusair Mohamedbhai, and Matthew J. Cron, of RATHOD | MOHAMEDBHAI LLC, submit this Motion to Quash and for Sanctions, and state as follows:

#### CONFERRAL

Pursuant to D.C.COLO.L.CivR 7.1, undersigned counsel conferred with counsel for Defendants Meeker Housing Authority ("MHA"), Melinda Parker, Michelle Buckler, Edy George, and Stacie Kincher (collectively "Defendants") prior to the filing of this motion. During a November 22, 2016 telephone call, undersigned counsel informed defense counsel that Plaintiffs objected to the contemplated subpoenas as they sought privileged and private

1

information, asking that Defendants delay issuance of the subpoenas until after the scheduling conference. After learning that Defendants intended to serve the subpoenas prior to the scheduling conference, undersigned counsel conferred with defense counsel in writing and informed him of Plaintiffs' intent to move to quash the subpoenas after the scheduling conference. *See* **Ex. 1**, *2016.12.30 Rathod-Baity Email Exchange*. Defense counsel refused to withdraw or delay service of the subpoenas. *See id.*

## INTRODUCTION

On December 22, 2016, Defendants notified Plaintiffs that they would be serving ten subpoenas duces tecum on six separate third parties seeking Plaintiffs' complete mental health records, employment records, school files, and bank account statements. These subpoenas were drafted as broadly as possible, with effectively no limit in temporal scope or subject matter relevancy. These subpoenas improperly bypass pre-trial discovery, seek documents that are privileged and confidential, and pursue documents that have no possible relevancy to any legal issue in violation of Fed. R. Civ. P. 26(b) and 45(d)(3)(A)(iii). In written communication regarding these subpoenas, Defendants refused to withdraw their subpoenas or delay service of the subpoenas until the Court could consider Plaintiffs' objections. Given this refusal to delay service, Plaintiffs can only assume that the purpose of these subpoenas is to annoy, embarrass, and harass. Plaintiffs respectfully request that the Court quash each of these subpoenas.

## BACKGROUND

On December 22, 2016, Defendants served Plaintiffs with a notice that they would be serving the subpoena duces tecum at issue in this motion. *See* **Ex. 2**, *2016.12.22 Notice of Subpoenas*. Notably, this date of service was the exact date that undersigned counsel twice notified defense counsel that undersigned counsel's office would be closed for the winter

2

holidays.  See **Ex. 3**, *2016.12.13 Wolf-Marks-Baity Email* (noting office closure); **Ex. 4**, *2016.12.21 Wolf-Marks-Baity Email* (same).

The subpoenas seek unfettered access to Plaintiffs' school records, employment files, bank account statements, and mental health records without regard to privilege or privacy.  *See* **Ex. 5**, *Subpoenas Duces Tecum*.  When, on November 22, 2016, Defendants had previously informed Plaintiffs of their desire to issue subpoenas seeking documents of such files, Plaintiffs had objected to these proposed subpoenas as unreasonable, overbroad, overly intrusive, privileged, and irrelevant or lacking proportional relevance.  Plaintiffs had therefore asked that the propriety of such subpoenas be addressed during the scheduling conference.  Despite this request, Defendants served these ten subpoenas two weeks before the scheduling conference.

On December 29, 2016, Plaintiffs notified Defendants that they would be moving to quash all ten subpoenas for the reasons previously expressed and that any such motion would be filed no later than January 6, 2017.  Given Plaintiffs' objections, Plaintiffs requested that Defendants refrain from serving the subpoenas until this Court could consider Plaintiffs' objections.  *See* **Ex. 1** at 2.  Defendants responded that they "will not agree to withdraw the subpoenas or delay service of the subpoenas."  *Id.*

On January 4, 2017, Plaintiffs learned that at least some subpoenas had been served the day prior.  Given that Plaintiffs apprised Defendants of their intent to file a motion to quash the subpoenas no later than January 6, 2017, it appears that Defendants rushed to serve the subpoenas before Plaintiffs could file the instant Motion.  As such, Defendants violated the spirit of Rule 45's notice requirement.

# MOTION TO QUASH

### I. Plaintiffs Have Standing to Challenge the Subpoenas

A party has standing to quash a third-party subpoena when the party has claims of privilege or privacy interests relating to the documents sought. *See Windsor v. Martindale*, 175 F.R.D. 665, 668 (D. Colo. 1997). In this case, Defendants seek four categories of documents: (1) school records; (2) employment records; (3) bank records; and (4) mental health records. Each of these categories are ones in which privilege and privacy concerns exist, thereby conferring standing. *See, e.g.*, Colo. Rev. Stat. § 24-72-204(3)(e)(I) (establishing privacy interest in "information directly related to a student and maintained by a public school" and providing for release of such information through a subpoena only after the "student is provided an opportunity to seek protective action"); 20 U.S.C. § 1232g (creating federal privacy interest in education records); *Warnke v. CVS Corp.*, 265 F.R.D. 64, 66 (E.D.N.Y. 2010) (holding that plaintiff had standing to move to quash third-party subpoena seeking employment records); *Khouj v. Darui*, 248 F.R.D. 729, 732 n. 6 (D.D.C. 2008) (noting that parties have standing to move to quash subpoenas seeking financial records); *People v. Mason*, 989 P.2d 757, 758 (Colo. 1999), *as modified on denial of reh'g* (Dec. 13, 1999) (recognizing that "citizens of Colorado have a reasonable expectation of privacy in bank and telephone records."); *Jaffee v. Redmond*, 518 U.S. 1, 9-18 (1996) (recognizing the psychotherapist-patient privilege under federal law).

### II. The Subpoenas Should Be Quashed for Failing to Comply with the Federal Rules of Civil Procedure

A. <u>Defendants Improperly Attempt to Use Trial Subpoenas to Conduct Pre-Trial Discovery</u>

All ten subpoenas duces tecum at issue in this motion were served pursuant to Fed. R. Civ. P 45. This rule appears in Title VI of the Federal Rules of Civil Procedure, entitled "Trial," and the purpose of Rule 45 is for the issuance of trial subpoenas. *See Sawatzky v. United States*,

4

No. 11-CV-03182-REB-GPG, 2013 WL 3771269, at *4 (D. Colo. July 16, 2013). "'Trial subpoenas are appropriate in certain circumstances, such as securing an original document previously disclosed during discovery, or for purposes of memory recollection or trial preparation.'" *Id.* (quoting *Revander v. Denman*, No. 00 Civ. 1810-RJH, 2004 WL 97693 (S.D.N.Y. Jan. 21, 2004)). "The purpose of a trial subpoena under Rule 45 should not be the provision of discovery." *Id.*

As this Court observed in *Sawatzky*, the Federal Rules of Civil Procedure "set forth the orderly, consistent and predictable flow and management of litigation and the inexpensive, complete and efficient flow of discovery with minimal intervention from the courts." *Id*. at *3. Defendants could have sought the documents sought in the subpoenas through requests for production, allowing Plaintiffs to review relevant documents for privilege and create a privilege log under Rule 26(b)(5) if need be. *See, e.g.*, *Hasbro, Inc. v. Serafino*, 168 F.R.D. 99, 100 (D. Mass. 1996) ("If documents are available from a party, it has been thought preferable to have them obtained pursuant to Rule 34 rather than subpoenaing them from a non-party witness [pursuant to Rule 45].") (quoting 8A Wright, Miller & Marcus: Federal Practice and Procedure § 2204 (1994)) (alterations in original); *Burns v. Bank of Am.*, No. 03 CIV.1685 RMB JCF, 2007 WL 1589437, at *14 (S.D.N.Y. June 4, 2007) "[S]ubpoenas under Rule 45 are clearly not meant to provide an end-run around the regular discovery process under Rules 26 and 34."). Rather than utilizing the normal channel of written discovery, Defendants abused the Court's subpoena power in order to obtain privileged and confidential documents. This abuse of the judicial process should not be tolerated and all subpoenas duces tecum should be quashed.

5

B.      <u>Defendants Served Subpoenas Despite Learning that Plaintiffs Planned to File Objections</u>

Rule 45(a)(4) requires that notice must be served on each party prior to a subpoena being served. The purpose of the "prior notice" rule is to "afford other parties an opportunity to object to the production."[1] Fed. R. Civ. P. 45, Advisory Committee Notes to 1991 Amendments.

Here, Defendants chose to provide notice to Plaintiffs on December 22, 2016, when Defendants were aware that undersigned counsel's office would be closed for the holiday season. *See* **Ex. 3-4**. Upon reviewing the subpoenas, Plaintiffs notified Defendants of their objections and their intent to file the present motion to quash. *See* **Ex. 1**. Plaintiffs stated they would file the motion no later than January 6, 2017, and asked that Defendants refrain from serving the subpoenas before this time. *See id.* Defendants stated that they would neither withdraw nor delay service.[2] *See id.* Notably, Defendants did not provide any reason for their refusal to delay service. Given the early stages of this litigation, Defendants could not possibly have been prejudiced by waiting just a few days for Plaintiffs to raise the matter with this Court. By racing to serve the subpoenas before Plaintiffs had opportunity to move to quash the subpoenas, Defendants have undermined the purpose of the "prior notice" rule and abused the judicial process.

C.      <u>The Subpoenas Duces Tecum Improperly Call for Production of Documents More than 100 Miles from the Recipients' Addresses</u>

Pursuant to Rule 45(c)(2)(A), a subpoena may command the production of documents "at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person." Each of Defendants' subpoenas commands its recipient to produce documents at

---

[1] In 2007, the Rule was further amended to make it clear that notice must be given prior to the service of the subpoena, not the production of the documents. Fed. R. Civ. P. 45, Advisory Committee Notes to 2007 Amendments.

[2] Undersigned counsel has learned that at least some of the subpoenas have already been served as counsel has been contacted by some of the recipients of the subpoenas.

defense counsel's firm in Denver, Colorado. Meanwhile, each recipient resides, is employed, or regularly transacts business within Meeker or the area surrounding Grand Junction. According to Google Maps, Meeker, Colorado is 225 miles from defense counsel's office. *See Citizens for Peace in Space v. City of Colorado Springs*, 477 F.3d 1212, 1219 (10th Cir. 2007) (taking judicial notice of an online distance calculation that relied on Google Maps data). As such, these subpoenas are improper on their face.

D. <u>The Subpoenas Duces Tecum Seek Documents and Information That Far Exceed the Proper Scope Under Fed. R. Civ. P. 26 and 45</u>

Defendants' subpoenas are also infirm because they seek private and privileged information far beyond what is conceivably relevant in this case. It is long-settled that "the scope of discovery through a subpoena is the same as that applicable to Rule 34 and the other discovery rules." Fed. R. Civ. P. 45, Advisory Committee Notes to 1970 Amendments; *see also, e.g.*, *In re Subpoena of DJO, LLC*, 295 F.R.D. 494, 497 (S.D. Cal. 2014). Rule 34, which governs the production of documents between parties, designates the proper scope of discovery as that specified in Rule 26(b). *See* Fed. R. Civ. P. 34(a). Rule 26(b)(1) provides in turn,

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.[3]

Rule 26 continues,

---

[3] Rule 26(b) was amended in 2015 to prevent parties from abusing the judicial process by seeking to discover all "relevant but inadmissible information that appear[ed] 'reasonably calculated to lead to the discovery of admissible evidence.'" Fed. R. Civ. P. 26, Advisory Committee Notes to 2015 Amendments. As the Advisory Committee explained, this phrase had "been used by some, incorrectly, to define the scope of discovery." *Id.* The Advisory Committee was concerned that "use of the 'reasonably calculated' phrase to define the scope of discovery might swallow any other limitation on the scope of discovery." *Id.* (internal quotation marks and citation omitted).

> On motion or its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; . . . or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C). Rule 26 further dictates,

> Every disclosure under Rule 26(a)(1) or (a)(3) and every discovery request, response, or objection must be signed by at least one attorney of record in the attorney's own name . . . . By signing, an attorney or party certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry:
> . . .
> (B) with respect to a discovery request, response, or objection, it is:
>> . . .
>> (ii) not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and
>> (iii) neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action.

Fed. R. Civ. P. 26(g)(1).

Accordingly, documents sought through subpoenas are subject to the same relevancy and proportionality requirements as any other method of discovery, and these requests must not be made for any improper purpose. Despite these well-known requirements, Defendants have requested the following documents through their subpoenas:

- Subpoenas 1 and 2, issued to Rio Blanco BOCES:
    - All DOCUMENTS contained in your file(s) for Megan McFadden and A.J. White, including: (a) Standardized test scores; (b) Individual Education Plans (IEP) including any notes, reports, correspondence, and recommendations made during any meeting to create, review or modify an IEP; (c) Section 504 plans and/or requests for accommodations; (d) reports on Response to Intervention; (e) Reports, notes, emails, and correspondence written as a result of the school's evaluation for special education or related services; and (f) Reports, notes, emails, and correspondence relating to Megan McFadden's and A.J. White's school performance or special needs.
- Subpoenas 3 and 4, issued to Meeker Public School District:
    - All DOCUMENTS contained in Megan McFadden's and A.J. White's files, including but not limited to: (a) Report cards; (b) Standardized test scores; (c)

8

  Attendance records; (d) Discipline records including any Behavior Intervention Plans; (e) Individual Education Plans (IEP) including any notes, reports, correspondence, and recommendations made during any meeting to create, review, or modify and IEP; (f) Section 504 plans and/or requests for accommodation; (g) Reports on Response to Intervention; (h) Reports, notes, emails, and correspondence written as a result of the school's evaluation for special education or related services; (i) Reports, notes, emails, and correspondence related to Megan McFadden and A.J. White's school performance or special needs; (j) Records relating to diagnosis of ADHD and any request for accommodation for ADHD for A.J. White, plus any records relating to Megan McFadden's anxiety and/or depression and any request for accommodations; and (k) Records relating to any diagnosis of depression, anxiety, or ADHD and any request for accommodations for any mental health condition for A.J. White, plus records relating to any diagnosis of depression or anxiety and any request for accommodations for any mental health condition for Megan McFadden.

- Subpoena 5, issued to Meeker Public School District:
  - All DOCUMENTS contained in Megan McFadden's employment file, including but not limited to: (a) Any and all performance reviews; (b) Any and all W-2 information; (c) Any and all attendance records; (d) Any and all on-the-job injury or incident reports; and (e) Any and all discharge paperwork.
- Subpoena 6, issued to Flat Top Fuels:
  - All DOCUMENTS contained in A.J. White's employment file, including but not limited to: (a) Application(s) for employment; (b) Job description for each position held by A.J. White; (c) Payroll records including any W-2 or 1099 forms; (d) Records of attendance or dates worked; (e) Any discipline file; (f) Record of any reviews; (g) Record of any raises or promotion; (h) Any request for Section 504 accommodations; (i) Any record of any accommodations made for A.J. White; (j) Training materials provided to A.J. White; and (k) Employee handbook or manual provided to A.J. White.
- Subpoena 7, issued to Danny R. DeWitt/Weatherford Electric:
  - All DOCUMENTS contained in Lonnie White's employment file, including but not limited to: (a) Application(s) for employment; (b) Payroll records including any W-2 and 1099 forms from 2015 to present; (c) DOCUMENTS showing the jobs Lonnie worked on from 2015 to present; (d) DOCUMENTS showing any cash payments to Lonnie White from 2015 to present; (e) Any unemployment claims or record of unemployment benefits paid to Lonnie White from 2015 to the present; and (f) Any discipline file.
- Subpoena 8, issued to Mountain Valley Bank:
  - All statements regarding any account or instrument held by Lonnie J. White since January 1, 2015 to present, including but not limited to accounts ending in "####".
- Subpoenas 9 and 10, issued to Mind Springs Health:
  - (1) All DOCUMENTS contained in your case file(s) for Megan McFadden and A.J. White; (2) The documents you are required to maintain pursuant to C.R.S. 12-43-203(3) and 12-43-222(1)(u); (3) Intake DOCUMENTS for Megan McFadden and A.J. White; (4) All DOCUMENTS from any counseling session with Megan McFadden and A.J. White (except notes from any psychotherapy sessions); (5) To

9

the extent you provided psychotherapy – please identify the psychotherapist and the location of any psychotherapy notes; (6) DOCUMENTS of any testing conducted by Mind Springs Health of Megan McFadden and A.J. White, including the raw data for each test; (7) Reports on any test by Mind Springs Health of Megan McFadden and A.J. White; (8) All DOCUMENTS showing Megan McFadden's and A.J. White's attendance at any counseling or psychotherapy session; (9) All billing records showing payment for services provided to Megan McFadden and A.J. White including any codes identifying the services provided; (10) All written materials, literature, or handouts provided to Megan McFadden, A.J. White, and Lonnie White; (11) All correspondence, emails, notes, and telephone messages concerning or related to Mind Health Springs providing a letter recommending a comfort pet for Megan McFadden and A.J. White; (12) All correspondence and emails between Catherine Eliasen (Plaintiffs' therapist) and Megan McFadden or Lonnie White, and/or attorneys representing Megan McFadden, A.J. White, and Lonnie White; (13) All medical records provided by any health care providers to Mind Springs Health related to Megan McFadden having depression and/or anxiety as well as related to A.J. White having depression, anxiety, or ADHD; (14) All tests, examinations, counseling sessions, reports, or medical records utilized by Mind Springs Health to determine that Megan McFadden and A.J. White are "disabled" as stated in Catherine Eliasen's letters of August 17, 2016, and January 22, 2015; and (15) The documents that formed the basis for Catherine Eliasen's conclusion that A.J. White is "dealing with a chronic mental illness, which meets the criteria of disability . . . ."

**Exhibit 5**.

At the outset, subpoenas seeking "any and all documents relating to" are routinely considered overly broad on their face. *See Badr v. Liberty Mut. Grp., Inc.*, No. CIV 3:06CV1208 AHN, 2007 WL 2904210, at *3 (D. Conn. Sept. 28, 2007); *Barrington v. Mortage IT, Inc.*, No. 07-61304-CIV, 2007 WL 4370647, at *4 (S.D. Fla. Dec. 10, 2007).

More fundamentally, Defendants are seeking private and privileged documentation that cannot possibly be relevant to the claims or defenses in this case and are highly disproportional to the needs of the case. *See* Fed. R. Civ. P. 26(b). For example, it is unclear what possible relevance Ms. McFadden's standardized test scores from approximately fifteen years ago have to any issue in this lawsuit. Defendants' refusal to delay service until such questions of relevancy and proportionality can be resolved – and their refusal to modify their subpoenas in any way over

Plaintiffs' multiple objections – demonstrates a willful violation of Rule 26(g).  As a result of Defendants' refusal to withdraw, modify, or even delay service of these subpoenas, Plaintiffs have been forced to file the instant motion to quash subpoenas.  A violation of Rule 26(g) made without substantial justification requires that the Court "impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both.  The sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation."  Fed. R. Civ. P. 26(g)(3).

E.     The Subpoenas Request the Disclosure of Privileged or Protected Matter

Rule 45 provides additional reason for the Court to quash the subpoenas as it provides that "the court . . . must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies."  Fed. R. Civ. P. 45(d)(3)(A)(iii).  Because no exception or waiver applies to Plaintiffs' privacy interests in their school, employment, and bank records, Subpoenas 1-8 must be quashed under this Rule.  Although Plaintiffs have waived privilege with regard to some of their mental health records by virtue of their legal claims, Subpoenas 9-10 request documents that greatly exceed the scope of any waiver, such that they must be either modified or quashed.

a.     Plaintiffs' School Records Are Not Relevant to the Matters in Dispute

Plaintiffs have a recognized privacy interest in their school records.  Colo. Rev. Stat. § 24-72-204(3)(e)(I) (establishing privacy interest in "information directly related to a student and maintained by a public school"); 20 U.S.C. § 1232g (creating federal privacy interest in education records).  Nevertheless, Defendants have served four subpoenas commanding – through the authority of the court – that **all** documents in Ms. McFadden's and A.J. White's school files be produced.  *See* **Ex. 5**, *Subpoenas 1-4*.  The subpoena requests documents

11

including, *but not limited to*, Plaintiffs' standardized test scores, report cards, attendance records, discipline records, and all correspondence and notes related to Plaintiffs' school performance.

For the most part, these requested documents have absolutely no relevance to any claim or defense in this case. Although Defendants also seek documentation regarding requests for accommodation and diagnoses of mental health conditions, it is unclear how these requests are proportionally relevant to the matters at issue with respect to Ms. McFadden. Ms. McFadden is a 33-year-old mother of two children who moved into Karen Court when she was 32 years old. The relevant legal question in this case is whether Ms. McFadden was disabled at the time that she was living at Karen Court and requesting a reasonable accommodation from Defendants. Whether or not she needed accommodation at school fifteen years prior has no relevance to whether she was disabled at the time of the events giving rise to this litigation. Ms. McFadden therefore requests that the Court quash Subpoenas 1 and 3 in their entirety.

A.J. White acknowledges that the allegations regarding his disability touch on the effect his symptoms had on his schooling. That said, A.J. White objects to the unreasonably broad scope of Defendants' discovery requests and asks that the Court either quash Subpoenas 2 and 4 or else modify them in the following way: Subpoena 2 shall be limited to documents listed in subsections (b), (c), (d), and (e) and Subpoena 4 shall be limited to documents listed in subsections (e), (f), (g), (h), (j), and (k).

    b.    <u>Employment Records</u>

Courts have found that using third-party subpoenas to inquire into one's employment records can harm an individual's employment security and result in unnecessary annoyance and embarrassment. *See, e.g.*, *Gambale v. Deutsche Bank Ag*, 2003 WL 115221, at *2 (S.D.N.Y. Jan. 10, 2003); *Perry v. Best Lock Corp.*, No. IP 98-C-0936-H/G, 1999 WL 33494858, at *2–4

(S.D. Ind. Jan. 21, 1999). For this reason, these subpoenas are regularly quashed. *See, e.g., id.*; *Conrod v. Bank of N.Y.*, No. 97 CIV. 6347 (RPP), 1998 WL 430546, at *1 (S.D.N.Y. July 30, 1998), *vacated pursuant to settlement* (July 30, 1998) (upholding decision to quash subpoenas and sanction defense counsel because "defense counsel should not have served a subpoena on plaintiff's employer, potentially jeopardizing her employment relationship, without first . . . attempting to obtain previously requested documents from plaintiff voluntarily or by way of a motion to compel."); *Warnke*, 265 F.R.D. at 70 ("[C]ontrary to Defendant's assertion, it is not entitled to obtain this information directly from Plaintiff's employers, but rather, must obtain the information from less intrusive means where possible."). Moreover, Defendants seek Plaintiffs' entire employment files, without any limit as to scope or any attempts to narrow the requests for the sake of proportionality. Courts routinely quash subpoenas with such extraordinarily broad language. *See E.E.O.C v. Unit Drilling Co.*, No. 13-CV-147, 2014 WL 130551, at *4 (N.D. Okla. Jan. 13, 2014) (quashing subpoenas seeking entire employment files and permitting defendant to reissue subpoenas "appropriately tailored to legitimate issues in the lawsuit," and providing guidance on scope). For these reasons, Plaintiffs respectfully ask that the Court quash Subpoenas 5, 6, and 7 in their entirety.

    c.    <u>Bank Records</u>

The Colorado Supreme Court has ruled that the "citizens of Colorado have a reasonable expectation of privacy in bank and telephone records." *Mason*, 989 P.2d at 758; *Transcor, Inc. v. Furney Charters, Inc.*, 212 F.R.D 588, 591 (D. Kan. 2003) (holding third party had a personal right with respect to its bank account records to give it standing to move to quash the subpoenas). Despite this significant privacy interest, Defendants have subpoenaed Lonnie White's bank account records for all bank accounts held at Mountain Valley Bank. It is unclear how this

information is relevant to any claims or defenses in this case. Further, even assuming that Defendants have any legitimate reason for pursuing this line of discovery, there are far less intrusive ways to obtain this information without infringing on Mr. White's privacy interests. Lonnie White hereby requests that the Court quash Subpoena 8 in its entirety.

    d.    <u>Mental Health Records</u>

Plaintiffs understand that they have waived the psychologist-patient privilege to their mental health records to the extent they have put their mental health at issue in this case. However, Plaintiffs have only waived the privilege of their mental health records that pertain to the allegations brought in this case. Even if the subpoenas were properly narrowed to seek only mental health records related to the diagnoses and time periods at issue in the case, Plaintiffs disagree that Defendants have a right to Category 9, seeking all bills showing payment for services provided to Plaintiffs. Plaintiffs' bills for mental health treatment are private and likewise irrelevant to the matters remaining at issue in this case. Furthermore, given the sensitive nature of the records requested, Plaintiffs respectfully ask that the Court quash Subpoenas 9 and 10, and that it direct Defendants to seek the production of these records through written discovery, thereby allowing Plaintiffs to first inspect the records and, where appropriate, provide a privilege log should any privileged materials be discovered that do not relate to the matters at issue in this case.

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court quash each of Defendants' subpoenas or modify them as appropriate. Plaintiffs also seek their costs and fees in filing this motion based upon Defendants' violation of Fed. R. Civ. P. 26(g).

DATED this 4th day of January, 2017.

>RATHOD | MOHAMEDBHAI LLC
>
>*s/ Laura B. Wolf*
>Laura B. Wolf
>Siddhartha H. Rathod
>Qusair Mohamedbhai
>Matthew J. Cron
>2701 Lawrence Street, Suite 100
>Denver, Colorado 80205
>(303) 578-4400
>(303) 578-4401 (f)
>lw@rmlawyers.com
>sr@rmlawyers.com
>qm@rmlawyers.com
>mc@rmlawyers.com
>
>ATTORNEYS FOR PLAINTIFFS

## **CERTIFICATE OF SERVICE**

      I hereby certify that on January 4, 2017, I electronically filed the foregoing **PLAINTIFFS' MOTION TO QUASH AND FOR SANCTIONS** with the Clerk of the Court using the CM/ECF system, which will send electronic notification to the following:

Josh A. Marks
Berg Hill Greenleaf Ruscitti LLP
1712 Pearl Street
Boulder, CO 80302
(303) 402-1600
(303) 402-1601 (f)
jam@bhgrlaw.com

*Attorney for Defendant Town of Meeker*

Stephen J. Baity
Godin & Baity, LLC
621 17th Street, Suite 1900
Denver, CO 80293
(303) 572-3100
sbaity@godinbaity.com

*Attorney for Defendants Meeker Housing Authority, Melinda Parker, Michelle Buckler, Edy George, and Stacie Kincher*

                                                                                                   RATHOD | MOHAMEDBHAI LLC

                                                                 *s/ Laura B. Wolf*_____
                                                                  Laura B. Wolf