## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-02304-WJM-GPG

MEGAN MCFADDEN,
LONNIE WHITE, and
ANTONIO "A.J." WHITE,

       Plaintiffs,

V.

TOWN OF MEEKER, COLORADO, a municipality,
MEEKER HOUSING AUTHORITY, a governmental entity,
MELINDA PARKER, an individual,
MICHELLE BUCKLER, an individual,
EDY GEORGE, an individual, and
STACIE KINCHER, an individual,

       Defendants.

---

## PLAINTIFFS' MOTION FOR PROTECTIVE ORDER

---

Plaintiffs Megan McFadden and A.J. White, by and through their attorneys Laura B. Wolf, Siddhartha H. Rathod, Qusair Mohamedbhai, and Matthew J. Cron, of RATHOD | MOHAMEDBHAI LLC, submit this Motion for Protective Order, and state as follows:

### CONFERRAL

Pursuant to D.C.COLO.L.CivR 7.1, undersigned counsel conferred with counsel for Defendants Meeker Housing Authority ("MHA"), Melinda Parker, Michelle Buckler, Edy George, and Stacie Kincher (collectively "Defendants") prior to the filing of this motion. *See* **Ex. 1**, *2017.01.02 Wolf-Baity Letter*. Defendants have agreed to narrow the scope of their request for health care records to a specified timeframe, but nothing more. *See* **Ex. 2**, *2017.01.03 Baity-*

*Wolf-Rathod Email*.[1]  Further, Defendants have affirmatively stated that they seek discovery into numerous issues for the purpose of finding evidence for "additional counterclaims."  *See id.*

## INTRODUCTION

Plaintiffs commenced the present action after Defendants unlawfully refused to allow them to maintain their residence at Karen Court with their companion animals in violation of federal civil rights statutes.  Ms. McFadden needed the assistance of a companion animal to help manage her anxiety, depression, and panic attacks, while A.J. White's companion animals assisted in the management of his depression and Attention Deficit Hyperactivity Disorder ("ADHD").  *See* Amended Complaint [ECF No. 72] at ¶¶ 35, 119.  Knowing their need for these companion animals, Defendants implemented and enforced two unlawful pet policies to force Plaintiffs to vacate their units, both of which Defendants refused to revoke until and unless Plaintiffs brought them to court.  *See* Response to Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction [ECF No. 49] at 1; Amended Complaint at ¶ 140.

On December 22, 2016, Defendants served Plaintiffs Megan McFadden and A.J. White their first set of written discovery.  *See* **Ex. 3**, *Defendants' First Set of Written Discovery on Megan McFadden*, Interrogatories Nos. 6, 9; **Ex. 4**, *Defendants' First Set of Written Discovery on A.J. White*, Interrogatories Nos. 6, 8, 19.  The nature and scope of Defendants' written discovery goes far beyond the matters at issue in this case and attempts to harass, unduly burden, and oppress Plaintiffs in the hopes of dissuading them from asserting their civil rights and the rights of others.  For the following reasons, Plaintiffs respectfully request that the Court enter a

---

[1] Although Defendants first agree to limit the scope of discovery to the mental health conditions asserted in Plaintiffs' Complaint, Defendants later claim that they "are entitled to discovery on any other mental or physical condition or life stressors" insofar as they may have caused or aggravated Plaintiffs' depression, anxiety, or panic attacks.  *See* **Ex. 2**.  As such, it appears Defendants are not willing to narrow the scope.

protective order forbidding or limiting inquiry into the following matters pursuant to Fed. R. Civ.

P. 26(c)(1).

## MOTION FOR PROTECTIVE ORDER

A motion for a protective order may be brought to protect a party from oppressive,

annoying, embarrassing, or unduly burdensome or expensive discovery.  Fed. R. Civ. P. 26(c)(1).

The scope of discovery is set by Fed R. Civ. P 26(b), which provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to
> any party's claim or defense and proportional to the needs of the case, considering
> the importance of the issues at stake in the action, the amount in controversy, the
> parties' relative access to relevant information, the parties' resources, the
> importance of the discovery in resolving the issues, and whether the burden or
> expense of the proposed discovery outweighs its likely benefit.

Rule 26(b) was amended on December 1, 2015 with the specific purpose of limiting the

unbounded scope of discovery provided for by the previous iteration of the rule.  Prior to

December 1, 2015, parties were permitted to discover "relevant but inadmissible information that

appear[ed] 'reasonably calculated to lead to the discovery of admissible evidence.'"  Fed. R. Civ.

P. 26, Advisory Committee Notes to 2015 Amendments.  This phrase was explicitly removed

because it had "been used by some, incorrectly, to define the scope of discovery."  *Id.*  The

Advisory Committee was concerned that "use of the 'reasonably calculated' phrase to define the

scope of discovery might swallow any other limitation on the scope of discovery."  *Id.* (internal

quotation marks and citation omitted).

"A party objecting to discovery bears the burden of establishing the information is

irrelevant by demonstrating the information does not come within the scope of relevance as

defined by Fed. R. Civ. P. 26(b)(1), or is of such marginal relevance that the harm in producing

the information outweighs the presumption in favor of broad disclosure."  *Zvelo, Inc. v.

SonicWALL, Inc.*, No. 06-CV-00445-PAB-KLM, 2013 WL 2338352, at *3 (D. Colo. May 29,

2013) (internal quotation marks and citation omitted).  On the other hand, "when the request is overly broad on its face or when relevancy is not readily apparent, the party seeking discovery has the burden to show the relevancy of the request."  *Id.* (internal quotation marks and citation omitted).

The decision to issue a protective order rests within the sound discretion of the district court.  *See Wang v. Hsu*, 919 F.2d 130, 130 (10th Cir. 1990).  A protective order may issue upon a showing of good cause.  *Zvelo*, 2013 WL 2338352 at *3.  To demonstrate good cause, the party seeking the protective order must "show that disclosure will result in a clearly defined and serious injury to that moving party."  *Klesch & Co. v. Liberty Media Corp.*, 217 F.R.D. 517, 524 (D. Colo. 2003).  "[T]he 'good cause' calculation requires that the Court balance the moving party's need for information against the injury which might result from unrestricted disclosure."  *Zvelo*, 2013 WL 2338352 at *3 (internal quotation marks, alterations, and citations omitted).  The Court should also consider any privacy interests that may be implicated by the discovery at issue and whether the case involves matters involving the public interest.  *See id.*

"Although pretrial discovery is broad, it is not limitless, and discovery should not be allowed where the resulting benefit would be 'negligible.'"  *Garcia v. Berkshire Life Ins. Co. of Am.*, No. 04-CV-01619-LTB-BNB, 2007 WL 3407376, at *3 (D. Colo. Nov. 13, 2007) (quoting *Munoz v. St. Mary–Corwin Hospital*, 221 F.3d 1160, 1169 (10th Cir. 2000)).  "[I]n every case, the court has the discretion, in the interests of justice, to prevent excessive or burdensome discovery."  *Qwest Commc'ns Int'l, Inc. v. WorldQuest Networks, Inc.*, 213 F.R.D. 418, 419 (D. Colo. 2003).

### A. Defendants Improperly Seek Discovery for the Purpose of Finding Evidence for "Additional Counterclaims"

Insofar as Defendants explicitly seek discovery for the purpose of determining whether there are grounds to prosecute counterclaims against Plaintiffs – a position affirmatively raised twice in Defendants' conferral email, *see* **Ex. 2** – Defendants abuse the discovery process and the judicial system. "'The discovery rules are designed to support a properly pleaded cause of action and to prepare defenses to charges made – not to discover whether a claim exists.'" *Richardson Greenshields Sec., Inc. v. Mui-Hin Lau*, No. 84 CIV. 6134 (SWK), 1986 WL 15237, at *3 (S.D.N.Y. Dec. 31, 1986) (quoting *Am. Commc'ns Ass'n, Local 10, I.B.T. v. Ret. Plan for Emp. of RCA Corp. & Subsidiary Companies*, 488 F. Supp. 479, 484 (S.D.N.Y.), *aff'd sub nom. Am. Commc'ns Ass'n. v. Ret. Plan for Employees of RCA Corp.*, 646 F.2d 559 (2d Cir. 1980)). In denying the defendants' motion to amend their Answer to file additional counterclaims, the *Richardson* court admonished, "The Laus' arguments at best reflect a lack of understanding as to the proper role of discovery, and at worst suggest a belated fishing expedition designed to delay Richardson's day in court while the Laus attempt to discover colorable counterclaims to assert." *Id.* Defendants' belief that the Federal Rules of Civil Procedure allow them to serve interrogatories for the purpose of discovering *whether the basis for additional counterclaims exists* is identically misguided. *See also Strait v. Mehlenbacher*, 526 F. Supp. 581, 584 (W.D.N.Y. 1981) (reaffirming court's previously issued protective order on overbroad and unduly burdensome interrogatories, noting "it appears that defendants are attempting to utilize the discovery rules as a 'fishing expedition' to find some basis of their civil rights [counter]claim. This is plainly in violation of the Federal Rules.").

**B. Defendants' Discovery Requests Are Oppressive, Unduly Burdensome, and Go Far Beyond the Scope of Rule 26(b)**

The disputes remaining in this case are simple: (1) whether Ms. McFadden and A.J. White were disabled at the time they requested a reasonable accommodation and (2) whether Ms. McFadden was entitled to the subsidized unit that Defendants forced her to vacate in September 2016. Despite the limited nature of the matters in dispute, Defendants have propounded 25 interrogatories on Ms. McFadden and 19 interrogatories on A.J. White, most of which pertain to highly personal, private, and privileged matters outside the scope of this litigation.

      1.     <u>Defendants' Requests for Unlimited Medical and Mental Health Treatment Information Go Beyond the Scope of this Case and Seek Privileged Information</u>

By pleading a cause of action based on their mental health disabilities, Plaintiffs McFadden and A.J. White have put their disabilities at issue and made relevant certain health records. However, considering the private and privileged nature of their health records, Plaintiffs' waiver of the psychotherapist-patient privilege only extends to health care information relevant to the matters alleged in this case.

Defendants make the following requests for privileged health care information that go beyond the scope of Rule 26(b):

1. Identify each health care provider, including any mental health professional that has diagnosed you with a mental condition or mental impairment. **Ex. 3** at Interrogatory No. 1; **Ex. 4** at Interrogatory No. 1.
2. Describe the treatment you have received for any mental condition or mental impairment, including the condition for which you were being treated, the dates of the treatment, and the health care provider or mental health professional that provided you with the treatment. **Ex. 3** at Interrogatory No. 2; **Ex. 4** at Interrogatory No. 2.
3. Identify all medications you have been prescribed for any mental condition or mental impairment, including but not limited to depression, anxiety, or panic attacks/ADHD. **Ex. 3** at Interrogatory No. 4; **Ex. 4** at Interrogatory No. 4.
4. Identify all pharmacies where you have filled any prescription for treatment of any mental condition or mental impairment including but not limited to

6

depression, anxiety, or panic attacks. **Ex. 3** at Interrogatory No. 5; **Ex. 4** at Interrogatory No. 5.

5. Describe the treatment you received from Catherine E. Eliasen at Mind Springs Health and Dr. A. Michael Vargas, M.D., including the dates of the treatment. **Ex. 3** at Interrogatory No. 11; **Ex. 4** at Interrogatory No. 10 (limited to treatment from Ms. Eliasen).

6. Identify each and every health care provider you have seen for any condition in the past five years. **Ex. 3** at Interrogatory No. 12; **Ex. 4** at Interrogatory No. 11.

7. Identify each and every pediatrician and primary care provider that has examined you or provided you with medical treatment from birth to present. **Ex. 3** at Interrogatory No. 9; **Ex. 4** at Interrogatory No. 8.

Each of these interrogatories is overly broad on its face. Through conferral, Defendants have agreed to temporally limit each of the above listed interrogatories except for the request that Plaintiffs identify each and every pediatrician and primary care provider that has treated them from birth through the present. *See* **Ex. 2**. As such, Ms. McFadden's Interrogatory No. 9 and A.J. White's Interrogatory No. 8 remain impermissibly overbroad and unrelated to the matters at issue in this case. Furthermore, despite agreeing to limit the scope of the time period for several of these requests, Defendants refuse to limit their discovery into mental health conditions that fall outside the scope of the allegations brought within this case. *See id.*

There is good cause to forbid or limit the discovery sought herein. Plaintiffs will be unduly burdened and their privacy rights infringed should they be required to disclose highly sensitive and confidential information regarding their private health that has no bearing on the claims at issue in this case. First, it would be nearly impossible for Ms. McFadden and A.J. White – both of whom are adults – to track down the name and contact information of every medical provider they have seen since birth, presumably beginning with the OBGYN that delivered them. Even if this request were not unduly burdensome, it remains to be seen what relevance this inquiry has to the issues in dispute. Second, it is unclear precisely how the name

and location of every pharmacy that has filled Plaintiffs' prescriptions – whether limited temporally or not – is relevant to the matters at issue in this case.

      With respect to the requests for information regarding Plaintiffs' mental health treatment, Defendants have refused to tailor these requests to the mental health conditions at issue in this case. Defendants seek information regarding *any* mental health treatment and *any* mental health diagnoses made since Plaintiffs moved into Karen Courts. According to Defendants, they "are entitled to discovery on any other mental or physical condition or life stressors that may have caused or aggravated Plaintiffs' depression, anxiety or panic attacks." **Ex. 2**. This is simply untrue. The question of Plaintiffs' disability is binary: either they were disabled at the time they requested reasonable accommodations, and thus entitled to the assistance of a companion animal, or they were not disabled at that time. Because the burden of proving their disability is Plaintiffs' to carry, Defendants have no right to inquire into whether Plaintiffs had or have additional mental health conditions that could increase their eligibility to have a companion animal. Considering that there exists a longstanding psychotherapist-patient privilege protecting one's mental health information from discovery, it would subvert the purposes of the privilege and seriously chill the public's seeking out mental health treatment to allow parties unfettered access to all mental health information the moment a lawsuit is filed claiming disability discrimination.

      Considering the privacy interests at stake along with the public interests in the advancement of civil rights, Defendants are plainly seeking information far beyond what they are entitled to discover. *See, e.g.*, *Utah Labor Comm'n v. Paradise Town*, 660 F. Supp. 2d 1256, 1263 (D. Utah 2009) ("Clearly, ensuring that disabled people enjoy equal rights to housing is an important public purpose.") Meanwhile, the discovery requests listed above seek disclosure of

the most private matters without regard to the limit and scope of the lawsuit.  It is evident from

the face of the requests that they are intended to annoy, embarrass, and harass.  For these

reasons, and in the interests of preventing excessive and unduly burdensome discovery, Plaintiffs

request that the Court issue a protective order prohibiting discovery into Ms. McFadden's

Interrogatories Nos. 5 and 9 as well as A.J. White's Interrogatories Nos. 5 and 8.  Plaintiffs also

request that the Court limit discovery into Ms. McFadden's Interrogatories Nos. 1, 2, 4, 11, and

12 as well as A.J. White's Interrogatories Nos. 1, 2, 4, 10, and 11 to the mental health conditions

alleged within the Complaint.

      2.     <u>Defendants' Requests for Information Regarding Non-Parties Is Oppressive and Harasses Plaintiffs</u>

Defendants also seek information regarding non-parties to harass Plaintiffs and dissuade

them from pursuing their legal claims.  Specifically, Defendants request the following private

information regarding Ms. McFadden's husband, a non-party to the case who never lived at

Karen Court:

> 1.  Identify Levi McFadden's employers between December 2015 and the present, including the dates of employment, the compensation he received from his employment, and the name of his supervisor.  **Ex. 3** at Interrogatory No. 18.
> 2.  Provide the name, address, and telephone numbers of Levi McFadden's mother, father, siblings, aunts, uncles, and grandparents living in Colorado.  **Ex. 3** at Interrogatory No. 8.

Defendants claim to be entitled to information regarding Mr. McFadden's employment

on the outdated and legally unsupported view that Mr. McFadden's income is one and the same

as Ms. McFadden's simply because they are married.  *See* **Ex. 2**.  While divorce may provide a

spouse with an entitlement to income through alimony, marriage certainly does not.  The days of

coverture are long over; husbands and wives are not one and the same in the eyes of the law.  As

such, Mr. McFadden's employment is unrelated to Ms. McFadden's legal claims for damages in this case.[2]  Ms. McFadden seeks a protective order on Defendants' Interrogatory No. 18.

Furthermore, it is entirely unclear why Defendants believe they should be given unfettered access to every one of Mr. McFadden's family members living within the state of Colorado.  Defendants failed to respond to Plaintiffs' request to confer over this interrogatory. *See* **Ex. 2**.  Considering that Defendants assert no interest in the information while mandatory disclosure of such private and personal information may unnecessarily harm Ms. McFadden's relationship with her husband and his family members, Ms. McFadden respectfully requests that the Court forbid discovery into this matter.

3.  <u>Defendants Seek Irrelevant Information Regarding Plaintiffs' Schooling and Employment History</u>

Defendants request irrelevant information regarding Ms. McFadden's schooling and A.J. White's employment history for the purpose of generating harassing subpoenas.  Already Defendants have notified Plaintiffs that they are intending to serve ten subpoenas duces tecum seeking overly broad school and employment records without any regard for Plaintiffs' privacy interests or the proper scope of discovery.  *See* Plaintiffs' Motion to Quash [ECF No. 87].  It is evident from the following requests that Defendants intend to issue additional subpoenas once they obtain more information regarding Plaintiffs' school and employment history:

1.  Identify each school you have attended including the dates of attendance. **Ex. 3** at Interrogatory No. 20.
2.  List your employment during the past two years, including the dates of employment, your supervisor, and your compensation.  **Ex. 4** at Interrogatory No. 9.
3.  List all sources of income for you between June 2016 and the present.  **Ex. 4** at Interrogatory No. 16.

---

[2] If Defendants seek to know whether Mr. McFadden supplemented Ms. McFadden's income during her time living at Karen Court, Ms. McFadden's Response to Interrogatory No. 17 will address this question.

As discussed in the Motion to Quash, Plaintiffs have significant privacy interests in these records. [ECF No. 87 at 4, 11-14]. Beyond Plaintiffs' privacy interests, it is unclear how a list of each of Ms. McFadden's schools is relevant to her claims or any possible defense considering that she is a 33-year-old mother of two. Defendants have failed to explain their need for these records. *See* **Ex. 2**. Therefore, Plaintiffs request that the Court issue a protective order forbidding their disclosure.

A.J.'s income has no relevance to any matter in dispute. Because Defendants were unable to carry out their intent to evict the Whites by this Court's issuance of a Temporary Restraining Order, there is no claim for damages arising from the Whites' loss of their housing subsidy. Insofar as Defendants seek information regarding A.J. White's income for purposes of determining the proper amount of rental income to charge the Whites, Defendants must go through the process dictated by HUD regulations. *See* Plaintiffs' Reply to Motion for Temporary Restraining Order and Preliminary Injunction [ECF No. 54] at 4-5. It is wholly inappropriate to use written discovery to conduct an investigation unrelated to the claims and defenses in this case. Insofar as Defendants contend that they need <u>not</u> go through the HUD-regulated procedure to verify the Whites' income for purposes of determining their rental payments, *see* **Ex. 2**, Defendants admit to intentionally engaging in a constitutional due process violation.

Given the privacy interests implicated by the discovery at issue and its unduly broad scope weighed against Defendants' artificial need for such information, Plaintiffs respectfully request that the Court forbid discovery into these matters.

4.    <u>Defendants Seek Irrelevant and Private Information Regarding Ms. McFadden's Relationship with the Department of Social Services</u>

Finally, Defendants request private information from Ms. McFadden that appears to be issued solely for the purposes of harassment. Defendants ask Ms. McFadden the following:

1. Identify the names of any social workers from the Rio Blanco Department of Social Services that have worked with you or your family.  **Ex. 3** at Interrogatory No. 21.

Defendants contend that they served this Interrogatory "to find out the Department of Social Services['] involvement with Mrs. McFadden which may have impacted the placement of the daughter" in order to contradict Ms. McFadden's claim that she was separated from her daughter because Defendants forced her to vacate her unit.  *Compare* **Ex. 2** *with* Amended Complaint at ¶ 154.  The interrogatory is not limited to the matter in dispute.  Instead, Defendants seek discovery far broader than the scope of what they claim – asking Ms. McFadden to identify the names of *any* social workers that have worked with her or her family during *any* time – in order to peer into private areas of Ms. McFadden's life.  For this reason, Ms. McFadden respectfully requests that the Court forbid discovery into this matter or else order Defendants to limit the scope of their interrogatory as to whether the Department of Social Services was involved in the placement of Ms. McFadden's daughter with Ms. McFadden's mother.

## CONCLUSION

While pretrial discovery is broad, it is not limitless.  Defendants have abused the judicial process in order to unduly burden and harass Plaintiffs with no legitimate purpose in sight.  In the interests of justice, and to prevent excessive, burdensome, and harassing discovery, Plaintiffs respectfully request that the Court grant this Motion for Protective Order.

DATED this 4th day of January, 2017.

RATHOD | MOHAMEDBHAI LLC

*s/ Laura B. Wolf*_____
Laura B. Wolf
Siddhartha H. Rathod
Qusair Mohamedbhai
Matthew J. Cron
2701 Lawrence Street, Suite 100
Denver, Colorado 80205
(303) 578-4400
(303) 578-4401 (f)
lw@rmlawyers.com
sr@rmlawyers.com
qm@rmlawyers.com
mc@rmlawyers.com

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that on January 4, 2017, I electronically filed the foregoing **PLAINTIFFS' MOTION FOR PROTECTIVE ORDER** with the Clerk of the Court using the CM/ECF system, which will send electronic notification to the following:

Josh A. Marks
Berg Hill Greenleaf Ruscitti LLP
1712 Pearl Street
Boulder, CO 80302
(303) 402-1600
(303) 402-1601 (f)
jam@bhgrlaw.com

*Attorney for Defendant Town of Meeker*

Stephen J. Baity
Godin & Baity, LLC
621 17th Street, Suite 1900
Denver, CO 80293
(303) 572-3100
sbaity@godinbaity.com

*Attorney for Defendants Meeker Housing Authority, Melinda Parker, Michelle Buckler, Edy George, and Stacie Kincher*

RATHOD | MOHAMEDBHAI LLC

*s/ Laura B. Wolf*
Laura B. Wolf