# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLORADO

Gordon P. Gallagher, United States Magistrate Judge

Civil Action No. 16-cv-2304-WJM-GPG

MEGAN McFADDEN, et al,

      Plaintiffs,

v.

TOWN OF MEEKER COLORADO, et al,

      Defendants.

---

**ORDER REGARDING PLAINITFFS' MOTION TO QUASH AND FOR SANCTIONS**

**&**

**ORDER REGARDING PLAINITFFS' MOTION FOR PROTECTIVE ORDER**

---

This matter comes before the Court on Plaintiffs' motions (ECFs #87 & 88)[1] (which were referred to this Magistrate Judge (ECFs #90 & 91)),[2] the Defendants' combined response (ECF # 103), and Plaintiffs' reply (ECFs #106 & 107). The Court has reviewed each of the aforementioned documents and any attachments. The Court has also considered the entire case

---

[1] "(ECF #87)" is an example of the convention I use to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). I use this convention throughout this Order.

[2] Any party may object to this non-dispositive Order within fourteen (14) days. Fed.R.Civ.P. 72(a).

file, the applicable law, and is sufficiently advised in the premises.   Oral argument was not necessary to resolve this discrete issue.   I Order as set forth in detail below.

Plaintiffs, residents of low income housing in Meeker, Colorado, filed suit alleging violations of the Fair Housing Act (FHA) and other claims due to their possession in their homes of companion animals for disability related needs.

Plaintiff Antonio White "has a history of suffering from severe depression and Attention Deficit/Hyperactivity Disorder ("ADHD")."   (ECF #72, p. 3, para. 8).   The conditions "substantially limit major life activities such as his ability to care for himself, concentrate, remember, interact with others, and cope with stress." *Id*.   Plaintiff White relied on one or more companion cats to "manage his disabilities." *Id*.   Plaintiff Lonnie White is Plaintiff Antonio White's father and "lives with and cares for his son." *Id*. at para. 7.

Plaintiff White (20 y.o.a. at the time the first amended complaint was filed) lived with his mother and step-father in Florida, was verbally and physically abused by the step-father, became withdrawn and suicidal, and struggled socially and at school. *Id*. at p. 8, paras. 29-30.   Plaintiff White suffered from severe depression and was prescribed medication in Florida. *Id*. at para 31. A cat provided the "most relief." *Id*.   At 17 y.o.a., Plaintiff White moved to Colorado to live with father Plaintiff Lonnie White. *Id*. at para 32.   Plaintiff White was at first without his companion cat, suffered increased symptoms (suicidal, withdrawn, focusing issues), was limited in major life activities (caring for himself, working, concentrating, remembering, interactions with others and coping with stress), and was placed on medications which made him feel worse, thus causing him to need his cat back. *Id*. at p. 9, paras. 33-37.

The move to Colorado was in January, 2014 at age 17, *Id.* at p. 8, para 32, and the move into the subsidized housing was in February, 2014.  *Id*. at p.10, para. 38.  Sometime later in 2014 or into 2015 Plaintiff White ended up with two cats but the exact time is not provided.  *See Id.* at p. 11, paras. 47-48.  The cat(s) were very helpful to Plaintiff White resolving or minimizing many of the effects of his disabilities.  *Id*. at p. 12, paras. 52-55.

Plaintiffs White were sent a 30 day eviction notice in August, 2016.  *Id*. at p. 14, para. 90.  The eviction notice discussed the cats, Plaintiff's change in status due to A.J. graduating from school and claimed financial disqualification for the unit.  *Id*. at para 91.  Information was provided in August, 2016 that Plaintiff was able to live without the medication because of the cat(s).  *Id*. at p. 19, para. 99.  The cats were less expensive and had fewer side effects than the medication.  *Id*. at para. 100.  On August 29, 2016, Plaintiff Lonnie White was informed that another claimed reason for eviction was not claiming Social Security Income, which he does not receive.  *Id.*  at paras. 105-06.

Plaintiffs White have been caused extreme anxiety, humiliation, emotional distress, have been forced to move to an apartment they cannot afford, and may not be able to find affordable housing.  *Id*. at p. 20, paras. 110-12.

Plaintiff Megan McFadden "suffers from chronic depression and anxiety."  *Id*. at p. 3, para. 9.  Plaintiff McFadden's disabilities "substantially limit her ability to care for herself, complete daily tasks, interact with others, cope with stress and sleep."  *Id*.  Plaintiff McFadden relied on her companion dog to "manage her disability."  *Id*.  Plaintiff has a history of anxiety and depression for which she was diagnosed and prescribed medication. *Id.* at p. 21, para. 115.

Plaintiff's anxiety and depression stem "largely from trauma and abuse suffered when she was younger." *Id.* at para. 116.

Plaintiffs, who requested reasonable accommodation and provided documentation as to why they should have the animals, were ultimately forced out of their low income housing. *Id* at p. 4, para. 12. Plaintiff McFadden suffers panic attacks, suicidal ideation, has sleeping problems, care issues, cannot complete daily tasks, work, interact with others or cope with stress. *Id.* at p. 22, paras. 117-19. Plaintiff McFadden met the companion dog in February, 2016, had thrice weekly companion visits starting at some unknown time thereafter, and then the dog moved in permanently. *Id.* at pp. 22-23, paras. 121, 127, and 129. The dog calmed Plaintiff McFadden, helped with stress, mitigated feeling of anxiety and depression, provided great improvement, and mitigated suicidal ideation. *Id.* at paras. 123, 124, 133, and 136.

In July, 2016, Plaintiff McFadden was served a notice to vacate. *Id.* at p. 24, para. 142. Plaintiff McFadden vacated the home, resulting in Plaintiff McFadden's 8 y.o.a. daughter having to move in with a grandmother, causing Plaintiff McFadden and child to suffer significant emotional distress, financial harm and other injuries. *Id.* at p. 26, paras. 153-55.

The complaint states that Plaintiffs are handicapped, meaning disabled. *Id.* at p. 30, para. 181. Plaintiff McFadden lost government benefits, suffered psychological and emotional harm, mental anguish, distress, humiliation, embarrassment, pain and suffering and degradation. *Id.* at p. 36, para. 226.

The current dispute is two-fold: (1) a motion to quash ten subpoenas *duces tecum* issued by Defendants; and (2) a motion for protective order seeking relief from certain interrogatories.

The subpoenas:

All subpoenas had a return place of Defense Counsel's office in Denver and a return time of 1/20/2017 at 10:00 a.m.  This matter was addressed orally during the scheduling conference on January 5, 2017.  At that time, the subpoenas having already been served, the Court did not quash or Order withdrawal of the subpoenas.  Instead, the Court allowed for the process to continue and Ordered the Defense to hold, under seal, any documents received pursuant to the various subpoenas.

1. Rio Blanco BOCES (Board of Cooperative Educational Services) (ECF # 87-5, subpoena 1, p. 3):

   Educational records for Megan McFadden.

2. Rio Blanco BOCES (Board of Cooperative Educational Services) (ECF # 87-5, subpoena 2, p. 8):

   Educational records for Antonio "A.J." White.

3. Meeker Colorado Public School District (ECF # 87-5, subpoena 3, pp. 13-14):

   Educational records for Megan McFadden a/k/a/ Megan Ballinger.

4. Meeker Colorado Public School District (ECF # 87-5, subpoena 4, pp. 19-20):

   Educational records for Antonio "A.J." White.

5. Meeker Colorado Public School District (ECF # 87-5, subpoena 5, p. 25):

   Employment records for Megan McFadden a/k/a/ Megan Ballinger.

6. Flat Top Fuels (ECF # 87-5, subpoena 6, p. 30):

   Employment records for Antonio "A.J." White.

7.      Weatherford Electric (ECF # 87-5, subpoena 7, p. 35):

Employment records for Lonnie J. White (much of the request limited to the time frame 2015 - present with the exception of the employment application and discipline file).

8.      Mountain Valley Bank (ECF # 87-5, subpoena 8, p. 40):

Bank records for Lonnie J. White (limited to 2015 – present).

9.      Mind Springs Health (ECF # 87-5, subpoena 9, pp. 45-46):

Mental health/counseling records for Megan McFadden a/k/a/ Megan Ballinger (excluding notes from any psychotherapy session).

10.     Mind Springs Health (ECF # 87-5, subpoena 10, pp. 51-52):

Mental health/counseling records for Antonio "A.J." White (excluding notes from any psychotherapy session).

General issues related to all subpoenas:

With respect to Plaintiffs' motions to quash, the question initially is whether Plaintiffs have standing to file motions to quash the challenged subpoenas.  The general rule is that a party has no standing to quash a subpoena served upon a third party, except as to claims of privilege or upon a showing that there is a privacy interest applicable. *Windsor v. Martindale,* 175 F.R.D. 665, 668 (D.Colo.1997); *see also Broadcort Capital Corp. v. Flagler Securities, Inc.,* 149 F.R.D. 626 (D.Colo.1993).  Absent a specific showing of a privilege or privacy, a court cannot quash a subpoena served on a third party.   *Windsor,*  175 F.R.D. at 668.

Fed.R.Civ.P. 45(d)(3)(A) requires the Court to quash or modify a subpoena that: (i) fails to allow a reasonable time to comply; (ii) requires excessive travel by a non-party; (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden.

Service of the subpoenas over the winter holidays:

There is some preliminary information provided by Plaintiffs that there was communication with Defendants, a request to delay service of subpoenas and ultimately a refusal to do so.   Based on the refusal to delay, Plaintiffs "can only assume that the purpose of these subpoenas [was] to annoy, embarrass, and harass."  (ECF #87, p. 2).   The Court has reviewed the email/correspondence chain with regard to this issue, an issue that was initially raised well before the winter holidays.   The Court finds nothing inappropriate with regard to the timing of the service of the subpoenas.   As is correctly noted by the Defense, there is no "time out" over the holidays that stops the process.   (ECF #103, p. 20).   To the extent that any prejudice occurred due to the winter holidays, that was ameliorated by the Court's Order that anything provided pursuant to the subpoenas be held under seal pending resolution of the matter.   I also do not find that the spirit of the notice requirement was violated by this chain of events.   *See* Fed.R.Civ.P. 45(a)(4).

Concerns regarding trial subpoenas:

Plaintiff argues that these subpoenas were incorrectly issued under Fed.R.Civ.P. 45 and compares this to S*awatzky v. United States*, No. 11-CV-03182-REB-GPG, 2013 WL 3771269, at *4 (D. Colo. July 16, 2013) (sic) (the initials for the presiding judicial officer should be RM for the Honorable Raymond Moore) (ECF #87, pp. 4-5).   The Court recalls that action, and as correctly noted by the Defense (ECF #103, pp. 18-19), the facts and circumstances of that were significantly different.   That was a circumstance where the Court quashed a number of late filed subpoenas, after the close of discovery.   The issue was not the use of subpoenas but the timing of the use to essentially do an end run around the close of discovery, the party could not do by

subpoena what they could not do otherwise.  This is a different and not analogous circumstance. At least in concept, Defendants' current usage of Rule 45(c)(2) is appropriate.

Plaintiff's argues that this bypasses discovery:

Essentially, Plaintiffs argue that discovery, or a portion thereof, cannot be conducted by subpoena and must instead proceed through a request for production.  *See* Fed.R.Civ.P. 34. While such a request is certainly one method of proceeding, one tool in a litigator's toolbox, I am not persuaded that a Rule 45 subpoena is not another proper tool.  I find no persuasive or controlling case law which would provide me authority to quash the subpoenas on this basis.

The 100 mile rule:

Pursuant to Rule 45(c)(2)(A) the "subpoena may command production  . . . within 100 miles . . ."  Contrary to Defendant's argument, this Rule <u>does</u> apply to production of documents, if the party is required to show up and produce them.  *See* Fed.R.Civ.P. 45(c)(2)(A), *contra. Premier Election Solutions, Inc. v. SysTest Labs Inc.*,  2009 WL 3075597 (D. Colo. 2009) (disagreement therein over whether the distance was 91 miles v. 117 miles and it appears much of the provision was by mail).

Here, the distance is in excess of 200 miles.  The subpoena commands production at "the time, date and place set forth below . . .", a Denver address.  (*example* ECF # 87-5, p.2).  The practical issues with this argument are many.  First, Plaintiffs would appear to have no standing to raise the issue as they will not be bearing the costs.  While Plaintiffs claim in their motion (ECF #87, p. 4) to have standing, standing to address some issues does not provide standing to

address all issues, e.g., there may be standing for privilege/protected information disputes but not mileage.  One party, Danny Dewitt/Weatherford Electric, has objected.  Second, it is unclear whether any party actually showed up in person or whether some agreement to mail/email was reached.

I therefore Order the following:  to the extent any party has not yet produced in response to the subpoena, that party must be given either the option to do so electronically or by mail or provided a local place of production within 100 miles (preferably in Meeker).  To the extent any party has produced and did so in excess of the 100 miles, that party is free to request recompense and the Court will consider such request when submitted.

Fed.R.Civ.P. 45(d)(3)(A)(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies:

The main thrust of Plaintiffs' argument is that the subpoenas should be quashed under Fed.R.Civ.P. 45(d)(3)(A)(iii).  Where the patient has injected her physical or mental condition into the case as a basis of a claim or an affirmative defense, the patient has impliedly waived any claim of privilege respecting that medical condition. *See Samms v. District Court, Fourth Judicial Dist. of State of Colo.,* 908 P.2d 520, 524 (Colo.1995); *Clark v. District Court,* 668 P.2d 3, 10 (Colo.1983) (plaintiff "impliedly waives any claim of confidentiality respecting that same condition"). The extent of the waiver is necessarily established by the facts at issue and is "limited to the cause and extent of the injuries and damages claimed." *Cardenas v. Jerath,* 180 P.3d 415, 424 (Colo.2008). I will look at each subpoena in turn regarding this issue.

1.    Rio Blanco BOCES (Board of Cooperative Educational Services) (ECF # 87-5, subpoena 1, p. 3):

Educational records for Megan McFadden.

Plaintiffs' motion as to this subpoena is denied as moot.  No records were provided as the providing party claims to have none.

2.    Rio Blanco BOCES (Board of Cooperative Educational Services) (ECF # 87-5, subpoena 2, p. 8):

Educational records for Antonio "A.J." White.

The records sought by this subpoena are proportional to the case, relevant and any privilege has been waived by this Plaintiff's claim and the manner in which he has asserted that claim.  These records are relevant and discoverable.  Plaintiff White specifically claims to have struggled at school without the benefit of a companion cat.  Also, given the timeframe set forth during which Plaintiff White attended school in Meeker, I do not find this overbroad.  Plaintiffs' motion is denied as to this subpoena.

3.    Meeker Colorado Public School District (ECF # 87-5, subpoena 3, pp. 13-14):

Educational records for Megan McFadden a/k/a/ Megan Ballinger.

Plaintiffs' motion as to this subpoena is denied as moot.  No records were provided as the providing party claims to have none.

4.    Meeker Colorado Public School District (ECF # 87-5, subpoena 4, pp. 19-20):

Educational records for Antonio "A.J." White.

The records sought by this subpoena are proportional to the case, relevant and any privilege has been waived by this Plaintiff's claim and the manner in which he has asserted that claim. These records are relevant and discoverable. Plaintiff White specifically claims to have struggled at school without the benefit of a companion cat. Also, given the timeframe set forth during which Plaintiff White attended school in Meeker, I do not find this overbroad. Plaintiffs' motion is denied as to this subpoena.

5.      Meeker Colorado Public School District (ECF # 87-5, subpoena 5, p. 25):
        Employment records for Megan McFadden a/k/a/ Megan Ballinger.

Plaintiffs' motion as to this subpoena is denied as moot. No records were provided as the providing party claims to have none.

6.      Flat Top Fuels (ECF # 87-5, subpoena 6, p. 30):
        Employment records for Antonio "A.J." White.

Plaintiff White specifically claims that he is limited in his major life activities, cannot care for himself, work, concentrate, remember, interact with others or cope with stress. The records sought by this subpoena are proportional to the case, relevant and any privilege has been waived by this Plaintiff's claim and the manner in which he has asserted that claim. These records are relevant and discoverable. The temporal scope of this subpoena is essentially self-limiting based on Plaintiff White's age and time on the job. Plaintiffs' motion is denied as to this subpoena.

7.    Weatherford Electric (ECF # 87-5, subpoena 7, p. 35):

Employment records for Lonnie J. White (much of the request limited to the time frame 2015 - present with the exception of the employment application and discipline file).

Plaintiffs' claim that Lonnie White (and A.J.) suffered "extreme anxiety, humiliation and emotional distress" (ECF # 72, p. 20, para. 110).  Further, Plaintiffs' claim that Lonnie "has been forced to apply for and place a deposit on an apartment he cannot afford," *Id*. at para. 111, and claim that "[i]f evicted, Lonnie may not be able to find another affordable home for he and A.J. to live in." *Id*. at para. 112.  By making these claims, Plaintiffs have certainly interjected Lonnie White's financial status into the action.  Also, to the extent it may show in a discipline file, that may have some bearing on extreme anxiety, humiliation and emotional distress.  However, subpoena 7 goes beyond the scope of relevance and proportionality.

The Court grants the motion to quash as to sections: (a).  Application(s) for employment; and (c).  Documents showing the jobs Lonnie White worked on from 2015 to present.

The Court denies the motion to quash as to sections (b), (d), (e) and (f).

I exercise my authority under Fed. R.Civ.P. 45(d)(3)(C) to specify an alternate condition as follows:  with regard to (f).  Any discipline file, given the potentially sensitive nature of that file, the Court Orders it to be provided to the Court, under seal, for *in camera* review.

8.    Mountain Valley Bank (ECF # 87-5, subpoena 8, p. 40):

Bank records for Lonnie J. White (limited to 2015 – present).

As set forth above regarding subpoena 7, Plaintiffs have certainly interjected Lonnie White's financial status into the action.  The scope of this subpoena is limited to 2015 to the present.

The Court denies the motion to quash as to subpoena 8.

9.      Mind Springs Health (ECF # 87-5, subpoena 9, pp. 45-46):

Mental health/counseling records for Megan McFadden a/k/a/ Megan Ballinger (excluding notes from any psychotherapy session).

Defendants claim and Plaintiffs dispute that this and the next subpoena are moot due to impending HIPPA releases.  Therefore, the Court will rule on subpoenas 9 and 10.

As Plaintiffs rightly state "they have waived the psychologist-patient privilege to their mental health records to the extent they have put their mental health at issue in this case"  (ECF # 87, p. 14).  The extent to which mental health is at issue is significant in this matter, perhaps more significant than any other area of claimed damages as delineated above in the factual recitations.  However, it is unclear how many years of records may be in the possession of Mind Springs Health and Plaintiff McFadden has not opened the door to a lifetime of digging.  *See Cardenas, supra* at 424 ("waiver . . . is limited to the cause and extent of the injuries and damages claimed"). I find that Defendants' subpoena demands with regard to this subpoena and subpoena 10 are relevant and appropriate to this matter yet only proportional by placing approximately a five (5) year limit.  The subpoena is to be limited to records on or after January 1, 2012.  I do not reach this number lightly but do so by balancing a number of factors including Plaintiff's privacy, Defendants' right to discover and present a defense to the claims against

them, the nature of the action and proportionality.  With regard to Plaintiff McFadden, I have been presented with information that she suffered trauma and abuse when younger.  She apparently got the companion dog in 2016 and life got better.  Allowing a picture back to 2012 will show the highs and lows and let the Defense determine and argue over whether the companion dog, or lack thereof, affected Plaintiff McFadden, or something else.

This length of time may or may not allow Defendants to get at what caused the diagnosed mental condition.  But causation really is not the issue.  The issue is whether the dog, or cat in Plaintiff White's case, help.  To get to that issue, we need time, but not so much as to be overly intrusive.

The Court grants in part and denies in part the motion to quash as to subpoenas 9 & 10.

10.    Mind Springs Health (ECF # 87-5, subpoena 10, pp. 51-52):

Mental health/counseling records for Antonio "A.J." White (excluding  notes  from  any psychotherapy session).


See above, subpoena 9, the Court grants in part and denies in part subpoena 10 with the same limitation is imposed in that the subpoena is to be limited to records on or after January 1, 2012.  With regard to Plaintiff A.J. White, I have been presented with information that he suffered verbal and physical abuse from his step-father.  I have also been presented that, prior to 2014, a companion cat was helpful in Florida and then again in Colorado from 2014.  For the same reasons set forth with regard to Plaintiff McFadden, I find it appropriate to impose the 2012 limitation.

Plaintiffs' motion for a protective order:

Plaintiffs move for a protective order under Fed. R.Civ.P. 26(c) asserting that the scope of the interrogatories "attempts to harass, unduly burden, and oppress Plaintiffs in the hopes of dissuading them from asserting their civil rights and the rights of others" (ECF # 88, p. 2). Plaintiffs argue that the disputes in this case are "simple" and essentially break down to: (1) whether Plaintiffs are disabled; (2) whether Plaintiff McFadden was entitled to her subsidized unit. *Id*. at p. 6.   Plaintiff further argues that Defendants' propounded interrogatories are disproportionate to the action. *Id. see* Fed.R.Civ.P. 26(b)(1).

The decision to issue a protective order rests within the sound discretion of the trial court. *Wang v. Hsu,* 919 F.2d 130, 130 (10th Cir.1990).  Such protection is warranted, upon a showing of good cause, to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed.R.Civ.P. 26(c).  A party seeking a protective order under Rule 26(c) cannot sustain the burden of demonstrating good cause merely by relying upon speculation or conclusory statements. *Tolbert–Smith v. Bodman,* 253 F.R.D. 2, 4 (D.D.C.2008). The movant must show specific facts demonstrating that the challenged discovery will result in a clearly defined and serious injury to the party seeking protection. *Id.; see also Exum v. United States Olympic Comm.,* 209 F.R.D. 201, 206 (D.Colo.2002).

For the same reasons set forth above, the Court finds that a temporal limitation is appropriate and finds that the same limitation, approximately five years, on or after January 1, 2012, is appropriate.

The interrogatories (only those objected to):

Megan McFadden:  Plaintiffs object to Nos. 1, 2, 3, 4, 5, 6, 8, 9, 11, 12, 18, 20, 21 (ECF #88-3, pp. 3-5);

1.     IDENTIFY each Health Care Provider, including any Mental Health Professional that has diagnosed you with a MENTAL CONDITION OR MENTAL IMPAIRMENT.

Plaintiffs acknowledge that McFadden's mental health is at issue in this action in that she has waived certain privileges but the "waiver of the psychologist-patient privilege only extends to health care information relevant to the matters alleged in this case" (ECF #88, p. 6).   The difficulty in parsing this out is that Plaintiff McFadden claims many mental health related issues as set forth in the facts section above:   chronic depression, anxiety, limited ability to care for herself, problems completing daily tasks, issues interacting with others, difficulties coping with stress, sleep issues, panic attacks, and suicidal ideation.   These cover a broad swath of possible sources and have been injected into this action by Plaintiff.   Defendants are entitled to determine if the claimed effects are caused by their alleged conduct or have some other cause.   *See Fox v, Gates Corp.*,  179 F.R.D. 303, 306 (D. Colo. 1998).

I find the interrogatory appropriate with the January 1, 2012 temporal limitation set forth above.

2.     Describe the treatment you have received for any MENTAL CONDITION OR MENTAL IMPAIRMENT, including the condition for which you were being treated, the dates of the treatment, and the health care provider or mental health professional that provided you with the treatment.

I find the interrogatory appropriate with the January 1, 2012 temporal limitation set forth above.

3.     Describe the treatment you have received for depression, anxiety or panic attacks including the dates of the treatment, the health care provider or mental health professional that provided you with the treatment and a description of the treatment.

I find the interrogatory appropriate with the January 1, 2012 temporal limitation set forth above.

4.    Identify all medications you have been prescribed for any MENTAL CONDITION OR MENTAL IMPAIRMENT. including but not limited to depression, anxiety, or panic attacks.

I find the interrogatory appropriate with the January 1, 2012 temporal limitation set forth above.

5.    Identify all pharmacies where you have filled any prescription for treatment of any MENTAL CONDITION OR MENTAL IMPAIRMENT including but not limited to depression, anxiety, or panic attacks.

I find the interrogatory appropriate with the January 1, 2012 temporal limitation set forth above.

6.    Describe in detail the "trauma and abuse" referenced in paragraph 116 of your Amended Complaint, including the perpetrator(s) of the trauma and abuse, the dates of the trauma and abuse, the location of the trauma and abuse and any witnesses to the trauma and abuse.

I find the interrogatory appropriate with the January 1, 2012 temporal limitation set forth above.

8.    Provide the name, address and telephone numbers of Levi McFadden's mother, father, siblings, aunts, uncles, and grandparents living in Colorado.

This is not an overly intrusive or burdensome request and will be allowed.

9.    Identify each and every pediatrician and primary care provider that has examined you or provided you with medical treatment from birth to the present.

I find the interrogatory appropriate with the January 1, 2012 temporal limitation set forth above.

11.    Describe the treatment you received from Catherine E. Eliasen at Mind Springs Health and Dr. A. Michael Vargas, M.D., including the dates of the treatment.

I find the interrogatory appropriate with the January 1, 2012 temporal limitation set forth above.

12.     Identify each and every health care provider you have seen for any condition in the past five years.

I find the interrogatory appropriate with the January 1, 2012 temporal limitation set forth above.

18.     Identify Levi McFadden's employers between December 2015 and the present, including the dates of employment, the compensation he received from his employment, and the name of his supervisor.

The only issue currently relevant, for the reasons set forth in Defendants' response (ECF # 103, pp.13-14) (eligibility then and now for Section 8 housing) is Levi McFadden's compensation, not the dates of his employment, name of his employer nor his supervisor. Plaintiff is to respond only as to the amount(s) of compensation from December 2015 to now.

20.     Identify each school you have attended including the dates of attendance.

To the extent that Plaintiff McFadden attended school during the five-year period, this information would be relevant.  I find the interrogatory appropriate with the January 1, 2012 temporal limitation set forth above.

21.      Identify the names of any social workers from the Rio Blanco Department of Social Services that have worked with you or your family.

I find the interrogatory appropriate with the January 1, 2012 temporal limitation set forth above.

Antonio A.J. White:  Plaintiffs object to Nos. 1, 2, 3, 4, 5, 6, 8, 9, 11, 16, 18, 19  (ECF #88-4, pp. 3-4).

1.	IDENTIFY each Health Care Provider, including any Mental Health Professional that has diagnosed you with a MENTAL CONDITION OR MENTAL IMPAIRMENT.

As with Plaintiff McFadden above, Plaintiff White's mental health is at issue in this action in that he has waived certain privileges.  Plaintiff White suffers from significant issues: severe depression, ADHD, has difficulty caring for himself, problems concentrating, problems remembering, problems coping with stress, problems interacting with others, has been suicidal, has been withdrawn, and has focusing issues.  These areas are appropriately explored during discovery with the 5 year temporal limitation.  I find the interrogatory appropriate with the January 1, 2012 temporal limitation set forth above.

2.	Describe the treatment you have received for any MENTAL CONDITION OR MENTAL IMPAIRMENT, including the condition for which you were being treated, the dates of the treatment, and the health care provider or mental health professional that provided you with the treatment.

I find the interrogatory appropriate with the January 1, 2012 temporal limitation set forth above.

3.	Describe the treatment you have received for depression, anxiety or Attention Deficit Hyper-activity Disorder ("ADHD"), including the dates of the treatment, the health care provider or mental health professional that provided you with the treatment and a description of the treatment.

I find the interrogatory appropriate with the January 1, 2012 temporal limitation set forth above.

4.      Identify all medications you have been prescribed . for any MENTAL CONDITION OR
        MENTAL IMPAIRMENT. including but not limited to depression, anxiety, or ADHD.

        I find the interrogatory appropriate with the January 1, 2012 temporal limitation set forth

above.


5.      Identify all pharmacies where you have filled any prescription for treatment of any
        MENTAL CONDITION OR MENTAL IMPAIRMENT. including but not limited to
        depression, anxiety, or ADHD.

        I find the interrogatory appropriate with the January 1, 2012 temporal limitation set forth

above.


6.      Describe in detail the verbal and physical abuse by your stepfather as referenced in
        paragraph 30 of your Amended Complaint, including the dates of the abuse, the location
        of the abuse and any witnesses to the abuse.

        I find the interrogatory appropriate with the January 1, 2012 temporal limitation set forth

above.


8.      Identify each and every pediatrician and primary care provider that has examined you or
        provided you with medical treatment from birth to the present.

        I find the interrogatory appropriate with the January 1, 2012 temporal limitation set forth

above.


9.      List your employment during the past two years, including the dates of employment, your
        supervisor and your compensation.

        I find the interrogatory appropriate.


10.

11.     Identify each and every health care provider you have seen for any condition in the past five years.

I find the interrogatory appropriate with the January 1, 2012 temporal limitation set forth

above.

16.     List all sources of income for you between June 2016 and the present.

I find the interrogatory appropriate.

18.     Identify each school you have attended within the past fifteen years, including the dates of attendance.

I find the interrogatory appropriate with the January 1, 2012 temporal limitation set forth

above.

19.     Describe in detail any attempts you have made to commit suicide, as alleged in paragraphs 30 and 33 of your amended complaint.

I find the interrogatory appropriate with the January 1, 2012 temporal limitation set forth

above.

ORDERS:

Sanctions:

Defendant moves for sanctions pursuant to Fed.R.Civ.P. 11(c).   As set forth at Fed.R.Civ.P. 11(c)(2) "a motion for sanctions must be made separately from any other motion . . ."  That has not occurred here, thus Defendant's embedded motion for sanctions is denied.

Plaintiffs' request for costs and fees:

Plaintiffs request costs and fees with regard to the motion to quash and for a perceived violation by Defendants of Fed.R.Civ.P. 26(g).   In the Court's estimation, each party won and lost part of this discovery dispute.  Pursuant to Fed.R.Civ.P. 37(a)(5)(C), I exercise my discretion and decline to award fees and costs.

Subpoena 1:           Plaintiffs' motion is MOOT;

Subpoena 2:           Plaintiffs' motion is DENIED;

Subpoena 3:           Plaintiffs' motion is MOOT;

Subpoena 4:           Plaintiffs' motion is DENIED;

Subpoena 5:           Plaintiffs' motion is MOOT;

Subpoena 6:           Plaintiffs' motion is DENIED;

Subpoena 7:           Plaintiffs' motion is GRANTED as to sections (a) and (c) (it appears, based on the letter at ECF #106-2, that these records have not yet been provided so there is nothing to return.  If this is not the case, the Defense shall follow the procedure set forth in Subpoena 9);

Plaintiffs' motion is DENIED as to sections (b), (d), (e) and (f),

With regard to section (f), Defendants shall comply with the Court's Order *infra* to provide the discipline records under seal for *in camera* review by the Court;

Subpoena 8:         Plaintiffs' motion is DENIED;

Subpoena 9:         Plaintiffs' motion is GRANTED in part and DENIED in part in that the subpoena is to be limited to records on or after January 1, 2012 (if records have been provided in response to this subpoena, the Defense can either return them to the providing entity to remove those from prior to 2012 or provide them to the Court for *in camera* review and culling to the appropriate time frame at the Defendants' pleasure);

Subpoena 10:        Plaintiffs' motion is GRANTED in part and DENIED in part in that the subpoena is to be limited to records on or after January 1, 2012 (with regard to non-complying records, the Defense shall follow the procedure set forth in subpoena 9);

The above Orders with regard to all records currently being held by the Defense, under seal, are stayed for seven (7) days from the filing of this Order.  The Plaintiffs shall notify the Defense, in writing, within 7 days if they intend to object within 14 days pursuant to  Fed.R.Civ.P. 72(a).  If no notice is provided, the Defense may begin reviewing the sealed records on the 8th day.  If notice is provided but not perfected, the Defense may review the records on the 15th day, and if an objection is filed, the records remained stayed until Judge Martinez issues a ruling on the matter.

McFadden interrogatories:

Interrogatory 1:      Plaintiffs' motion is GRANTED in part and DENIED in part in that the interrogatory is limited to on or after January 1, 2012;

Interrogatory 2:      Plaintiffs' motion is GRANTED in part and DENIED in part in that the interrogatory is limited to on or after January 1, 2012;

Interrogatory 3:      Plaintiffs' motion is GRANTED in part and DENIED in part in that the interrogatory is limited to on or after January 1, 2012;

Interrogatory 4:      Plaintiffs' motion is GRANTED in part and DENIED in part in that the interrogatory is limited to on or after January 1, 2012;

Interrogatory 5:      Plaintiffs' motion is GRANTED in part and DENIED in part in that the interrogatory is limited to on or after January 1, 2012;

Interrogatory 6:      Plaintiffs' motion is GRANTED in part and DENIED in part in that the interrogatory is limited to on or after January 1, 2012;

Interrogatory 8:      Plaintiffs' motion DENIED.

Interrogatory 9:      Plaintiffs' motion is GRANTED in part and DENIED in part in that the interrogatory is limited to on or after January 1, 2012;

Interrogatory 11:     Plaintiffs' motion is GRANTED in part and DENIED in part in that the interrogatory is limited to on or after January 1, 2012;

Interrogatory 12:     Plaintiffs' motion is GRANTED in part and DENIED in part in that the interrogatory is limited to on or after January 1, 2012;

Interrogatory 18:     Plaintiffs' motion is GRANTED in part and DENIED in part in that the interrogatory is limited only to the amount Levi McFadden made during the requested period.

Interrogatory 20:     Plaintiffs' motion is GRANTED in part and DENIED in part in that the interrogatory is limited to on or after January 1, 2012;

Interrogatory 21:     Plaintiffs' motion is GRANTED in part and DENIED in part in that the interrogatory is limited to on or after January 1, 2012;


White interrogatories:

Interrogatory 1:      Plaintiffs' motion is GRANTED in part and DENIED in part in that the interrogatory is limited to on or after January 1, 2012;

Interrogatory 2:      Plaintiffs' motion is GRANTED in part and DENIED in part in that the interrogatory is limited to on or after January 1, 2012;

Interrogatory 3:      Plaintiffs' motion is GRANTED in part and DENIED in part in that the interrogatory is limited to on or after January 1, 2012;

Interrogatory 4:      Plaintiffs' motion is GRANTED in part and DENIED in part in that the interrogatory is limited to on or after January 1, 2012;

Interrogatory 5:      Plaintiffs' motion is GRANTED in part and DENIED in part in that the interrogatory is limited to on or after January 1, 2012;

Interrogatory 6:      Plaintiffs' motion is GRANTED in part and DENIED in part in that the interrogatory is limited to on or after January 1, 2012;

Interrogatory 8:      Plaintiffs' motion is GRANTED in part and DENIED in part in that the
                      interrogatory is limited to on or after January 1, 2012;

Interrogatory 9:      Plaintiffs' motion is DENIED;

Interrogatory 11:     Plaintiffs' motion is GRANTED in part and DENIED in part in that the
                      interrogatory is limited to on or after January 1, 2012;

Interrogatory 16:     Plaintiffs' motion is DENIED;

Interrogatory 18:     Plaintiffs' motion is GRANTED in part and DENIED in part in that the
                      interrogatory is limited to on or after January 1, 2012;

Interrogatory 19:     Plaintiffs' motion is GRANTED in part and DENIED in part in that the
                      interrogatory is limited to on or after January 1, 2012;

A protective order (ECF # 112) has now been entered in this action.  Before public filing occurs
by the Defense of any medical, psychiatric, work, educational or banking record, the Defense
shall consult with the Plaintiffs to determine if such record should fall within the protective
order.

Any further discovery disputes SHALL be addressed as discussed during the scheduling
conference.   No discovery dispute motions will be accepted without compliance with the
Magistrate Judge's stated procedures on that subject and will be stricken *sua sponte* for failure to
comply.

Dated at Grand Junction, Colorado, this February 25, 2017.

_____

Gordon P. Gallagher

United States Magistrate Judge