IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

Gordon P. Gallagher, United States Magistrate Judge

Civil Action No. 16-cv-2304-WJM-GPG

MEGAN McFADDEN, et al,

    Plaintiffs,

v.

TOWN OF MEEKER COLORADO, et al,

    Defendants.

**ORDER REGARDING PLAINITFFS' MOTION FOR EMERGENCY HEARING ON INJUNCTIVE RELIEF (ECF #303)**

    This matter comes before the Court on Plaintiffs' motion for emergency hearing on injunctive relief (ECF #303),[1] Defendants' (Meeker Housing Authority, Parker, Buckler, George and Kincher (collectively MHA Defendants)) response (ECF #307), Plaintiffs' reply (ECF #313), and various other related documents and filings which will be discussed herein, the matter having been referred to this Magistrate Judge (ECF #304).[2] The Court has also considered the

---

[1] "(ECF #303)" is an example of the convention I use to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). I use this convention throughout this Order.

[2] Any party may object to this non-dispositive Order within fourteen (14) days. Fed.R.Civ.P. 72(a). Pursuant to 28 U.S.C. § 636(b)(1)(B), a district judge may designate a magistrate judge to conduct hearings and submit proposed finding of fact and recommendations with respect to any dispositive motion. While Plaintiffs' Motion herein is labeled as requesting "injunctive relief," thus ordinarily viewed as a motion appropriate for recommendation, Plaintiffs are in reality requesting non-dispositive sanctions. The label of a motion is not determinative for purposes of § 636(b)(1)(A) and (B). The Tenth Circuit has held that "[m]otions not designated on their face as one of those excepted in [§ 636(b)(1)(A) ] are nevertheless to be treated as such when

1

entire case file, the applicable law, and is sufficiently advised in the premises. Oral argument and testimony were taken on January 18, 2018. I GRANT the motion for the reasons set forth below.

During the summer of 2017 a discovery dispute arose out of Plaintiffs' belief that they were not being provided with all relevant and required documents by the MHA Defendants. An informal discovery dispute hearing was held pursuant to this Magistrate Judge's procedures on July 10, 2017. During that hearing, Defense Counsel Baity stated "if you think there are documents missing, you can come up and look at our computers, run your metadata search, and see if you can find any documents." Transcript of July 10, 2017 hearing (ECF #226, p. 13). There followed, during that hearing, some additional discussion on the subject, with the ultimate agreement between Counsel that Plaintiffs would engage in the proffered forensic search. *See generally* Transcript of July 10, 2017 hearing (ECF #226, pp. 13-19). As the proffer of the search came from the MHA Defendants, it was never Court Ordered. *Id*., *see also* Minutes and Orders – Discovery Dispute Hearing on July 10, 2017 (ECF #216).

On July 25, 2017, following some communications between Counsel on the subject, Forensic Pursuits (a company retained by Plaintiffs to conduct the search) went to Meeker, Colorado and copied the computer hard drive. On October 5, 2017, Plaintiffs produced to the MHA Defendants a report from Forensic Pursuits (Plaintiff's Eighteenth Supplemental Disclosures (the disclosed pages being FP 1-1691) (ECF #303-10). Following that disclosure, a dispute arose over whether Plaintiffs exceeded the scope of the agreed to search, whether Plaintiffs were now in possession of confidential and perhaps irrelevant documents, and whether

---

they have an identical effect." *First Union Mortgage Corp. V. Smith,* 229 F.3d 992, 995 (10th Cir.2000), citing *Oecelot Oil Corp. V. Sparrow Industries,* 847 F.2d 1458, 1462 (10th Cir.1988).

Plaintiffs were improperly using those documents. Of the approximately 1600 pages collected during the search, the parties agree that only 137 pages are disputed.

On December 15, 2017 the data breach letter (the letter) (ECF #303-1) was penned claiming:

1.  A data breach at Meeker Housing Authority (MHA);

2.  There was misappropriation of personal and confidential identifying information;

3.  A Court Order and an agreement between Counsel granted Plaintiffs' Counsel limited access to emails, that access was exceeded, and Defense Counsel was not aware of the unauthorized access;

4.  The access was just discovered and did not involve MHA management in any way;

5.  MHA is unaware of the extent of the dissemination of the information;

6.  The actions by the Counsel are a violation of State and Federal law; and

7.  There was a lengthy advisement of how to deal with the data breach, e.g., contact credit monitoring services, etc.

Plaintiffs, who became aware of this letter, filed the instant motion seeking relief (ECF #303). The District Court Ordered the immediate mailing of an interim letter (ECF #309). The pleadings and the circumstances of this dispute raise a number of issues which will be addressed below.

Plaintiffs argue that sanctions are appropriate for alleged litigation misconduct on the part of Defendants, citing *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991) (addressing sanctions under 28 U.S.C. § 1927 which allows imposition of costs against counsel personally for unreasonably and vexatiously multiplying the proceedings). By its very terms, § 1927 authorizes sanctions when a party multiplies "the proceedings in any case." 28 U.S.C. § 1927. Thus, courts are to apply § 1927 "to misconduct by an attorney in the course of proceedings in a case before the

court, not misconduct that occurs before the case appears on the federal court's docket." *Bender v. Freed* 436 F.3d 747, 751 (7th Cir.2006) (original quotes omitted). *See also In re Schaefer Salt Recovery, Inc.,* 542 F.3d 90, 101 (3rd Cir.2008) ("[Section] 1927 explicitly covers only the multiplication of proceedings that prolong the litigation of a case and likely not the initial pleadings, as the proceeding in a case cannot by multiplied until there *is* a case.")

The Tenth Circuit has defined unreasonable or vexatious conduct as "either intentional or reckless disregard of the attorney's duties to the court." *Braley v. Campbell* 832 F.2d 1504, 1512 (10th Cir.1987). *See also Shackelford v. Courtesy Ford, Inc.* 96 F.Supp.2d 1140, 1144 (D.Colo.2000). More specifically, for sanctions to be justified under § 1927 an "attorney's conduct must rise to the level of a serious and studied disregard for the orderly processes of justice." *Shackelford* 96 F.Supp.2d at 1144. While actions taken in bad faith certainly satisfy the identified standard, bad faith itself is not a discrete requirement under § 1927. *Hamilton v. Boise Cascade Exp.* 519 F.3d 1197, 1202 (10th Cir.2008). *See also Braley* 832 F.2d at 1512 (10th Cir.1987) (correcting a party's contention that sanctions under § 1927 are imposable only for subjective bad faith); *McCandless v. Great Atlantic and Pacific Tea Co.,* 697 F.2d 198, 200 (7th Cir.1983) (holding that an attorney who acts with "an empty head and a pure heart" is still responsible for the consequences of their actions). However, as the trial court noted in *Shackelford,* "[r]eckless conduct differs significantly from mere negligence." *Id.* Conduct that can be attributed to "inadvertence, incompetence, or unskillfulness" would therefore not warrant sanctions under § 1927. *Id.* (citing *United States v. Wallace,* 964 F.2d 1214, 1220 (D.C.Cir.1992)). Sanctions may also be levied against a party for wanton conduct or conduct which has occurred for purposes of harassment, delay or other improper reasons. *See Kornfeld v. Kornfeld,* 393 Fed. Appx. 575, 579-80 (10th Cir. 2010) (not selected for official publication).

The forensic examination was not Court Ordered:

As set forth above, the forensic examination of the MHA computers was not Court Ordered. During the course of a discovery dispute hearing, the MHA Defendants offered to allow a forensic search to allay an accusation that discovery was being withheld. That offer was accepted and the examination occurred. The Court did not Order the forensic search.

The scope of the search:

    a.    Attachments to emails.

During the search, emails and attachments thereto were collected. Defendants argue that looking at the attachments to emails exceeded the scope of the search, e.g., an email could be read/collected/copied, but not the attachment. The Court finds this argument wholly without merit. Be it a hard copy/paper letter or an email, the idea that the letter could be read but not the subsequent pages makes little sense. To the extent that there was any limitation as to the search of the Kincher computer only to allow the search of emails, any attachments thereto were fair game.

    b.    Limitation to emails only.

Defendants believe they agreed to a search of emails only. Unfortunately, the record is somewhat bereft of documentary proof on this issue. There exists the agreement to allow the search (transcript of July 10, 2017 hearing (ECF #226)), an email from Plaintiffs' Counsel to Defense Counsel dated July 10, 2017 which outlines the scope of the search (ECF #303-6), and an argument by Defense Counsel representing that there was a meeting on July 12, 2017 limiting the scope of the search (ECF #307, p. 4). To state now that the parties should have done a

significantly better job of delineating the exact scope and contours of their agreement for the forensic search is probably pointless for this matter but instructive for the future. While the proof is scant and there appears to be a viable dispute in this area, the July 10, 2017 email referencing imaging the MHA computer(s) seems to go far beyond looking for some missing emails. *See* ECF #303-6. Nevertheless, the Court cannot determine the exact scope of the search as the parties failed to fully document any agreement.

Disclosure of the collection and the follow-up:

As stated above, Plaintiffs disclosed the results of their July, 2017 forensic examination in their 18th supplemental disclosures on October 5, 2017. All was quiet until December 6, 2017. On that date, Plaintiffs' Counsel received an email from Defense Counsel regarding the MHA Defendants' intent to file a motion for sanctions on this issue and requesting a time to discuss the proposed motion (ECF # 303-11, p. 7). ECF #303-11 demonstrates the parry and riposte engaged in by the parties prior to the mailing of the letter. During the back and forth exchange, Defendants clearly stated that they believed the search exceeded the scope allowed and Plaintiffs refuted this. Defendants questioned the use of the information and Plaintiffs stated that they had redacted from public filing any confidential information (ECF #303-11, p. 4, point 5).

The parties requested a discovery dispute hearing before this Court which was held on December 18, 2018 (ECF # 302). A resolution of outstanding issues was not reached, primarily due to the similarity to matters in a pending motion to dismiss (ECF # 288) which was not referred and this Court's reluctance to have two judicial officers resolving similar or identical matters.

On December 15, 2017, the letter was drafted and sent soon thereafter.

The letter:

A hearing was held before the Court on January 18, 2018. Testimony was taken from Mike McKenzie and Stacie Kincher. It was determined that the letter was written, at the suggestion of outside Counsel Applegate, by outside counsel. Of great significance, is the fact that Defense Counsel Baity reviewed the letter prior to it being sent, was on the conference call when a determination was made to send the letter, and never tried to stop or cautioned against the sending of the letter in any fashion. Also, Defendant Kincher was directly involved in the letter process. The specific testimony as to who drafted or came up with the letter was "all of us." This included Counsel Baity, Counsel Applegate, Defendant Kincher, and Mr. McKenzie (witness and expert). All were in agreement to draft and send the letter.

Findings of fact and conclusions of law:

The December 15, 2017 letter was unnecessary, inaccurate in significant respects, an improper manner of conducting litigation and a very poor idea. As to the claims made in the letter of a "data breach," in our current society, the term data breach raises fear and apprehension among those who perceive themselves victims of such an occurrence. This was nothing of the sort. The current dispute is one of whether there was overreach in an ESI situation. The search was allowed, it was the extent of the search that was at issue. The Court finds no need for the matter to have been handled by way of the letter. The mechanisms for resolving this, from a stipulated protective order to potential claw-back, were all available, unfortunately ignored or just not used. As to the suggestion that there was a Court Order that was exceeded, that was clearly not correct. The Court never Ordered the forensic search, it was volunteered. As to the

idea that this was a recent discovery, e.g. that Defendants had just discovered this supposed breach, that too is misleading. In October, the documents were released. Over two months later the letter was sent. Sufficient time existed in the interim to resolve this matter in a more orderly and much less dramatic and damaging fashion. As to violating state and federal law, that too is a significant overreach. If Plaintiffs were in fact in possession of sensitive information, it could be held "confidential" pursuant to the stipulated protective order until such time as the matter could be litigated and resolved by the Court.

I find that the sending of the letter was improper, unnecessary and likely prejudicial to both Plaintiffs' Counsel personally, their firm, and to Plaintiffs' case.

Defense Counsel was involved in the letter. While the claim is that Defendants' outside Counsel wrote and sent this letter, this is a hollow excuse. Defense Counsel was on the conference call during which the letter was discussed, never discouraged its use and reviewed it prior to dissemination. Defense Counsel was certainly aware that many of the intended recipients were potential if not actually listed witnesses in this action, witnesses who were being told that Plaintiffs' Counsel took their information in violation of Court Order and in violation of state and federal law. These are heavy accusations, false accusations, and improper.

As to the claim that HUD or CHAFA may have required the letter be sent, that too does not comport with reality. The exhibits demonstrate that while HUD was contacted, no requirement or even suggestion was made that such a letter be sent. Instead, HUD directed Mr. McKenzie to raise the issue with the Court (ECF #303-16), **which is exactly how it should have been handled**.

I specifically find that Defendants and Defense Counsel Baity, by drafting and sending the letter, by their involvement and failure to stop or counsel against the letter, acted in bad faith

8

and in an improper manner in their litigation of this action. Their behavior and actions exhibit a serious and studied disregard for the orderly processes of justice. Counsel's involvement in the process, review and, at a minimum, tacit acceptance of the letter and the process, and failure to stop the sending of the letter or to at least advise against such constitutes unreasonable and vexatious conduct which multiplied the proceedings in this action. False statements and accusations were publicly made and disseminated, in some circumstances to potential witnesses, by Defendants and about Plaintiffs and their Counsel. This letter harassed both Plaintiffs and their Counsel and was injurious of them. The conduct herein was wanton, harassing, and occurred for improper reasons. The Court specifically determines that Rathod/Mohamedbhai law firm violated no Court Order, no civil, and no criminal law.

1. Accordingly, it is hereby ORDERED that Defendants shall immediately cease in the mailing of any such additional letters (Ordered 1/18/2018 in open Court);

2. It is further ORDERED that Defendants shall provide a distribution list to the Court and Plaintiffs' Counsel by close of business on 1/24/2018 (Ordered 1/18/2018 in open Court) (certificate of compliance file 1/22/2018 (ECF #322));

3. It is further ORDERED that the letter attached as an exhibit to this Order be sent to the entire distribution list within two (2) business days of the conclusion of any objection time pursuant to Fed.R.Civ.P. 72(a) or in sixteen (16) days if there is no objection, whichever may be appropriate, and that certification of such mailing be supplied to the Court (not certified mailing but a certification from Defense Counsel that the mailing occurred);

4. It is further ORDERED that Defendants shall, using the process set forth in the stipulated protective order (ECF #112), designate as confidential any items they believe merit such designation;

5. It is further ORDERED that Plaintiffs shall continue to maintain the documents as confidential until the aforementioned designation and any follow-up litigation on such designation is complete;

6. It is further ORDERED that Plaintiffs shall submit a bill of costs for their fees and costs to litigate this issue within fourteen (14) days;

7. It is further ORDERED that, should this matter proceed to trial, Plaintiffs will be entitled to a jury instruction stating that Defendants proceeded improperly during the course of litigation by sending a harassing letter to potential witnesses in bad faith; and

8. It is further ORDERED that all parties shall insure that appropriate witnesses and experts are informed of the stipulated protective order and their duties and obligations to comply with the terms of that Order (Ordered 1/18/2018 in open Court).

Dated at Grand Junction, Colorado, this January 23, 2018.

_____

Gordon P. Gallagher

United States Magistrate Judge