**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No. 16-cv-2304-WJM-GPG

MEGAN MCFADDEN,
LONNIE WHITE, and
ANTONIO "A.J." WHITE,

      Plaintiffs,

v.

MEEKER HOUSING AUTHORITY, a Property Management Company,
MELINDA PARKER,
MICHELLE BUCKLER,
EDY GEORGE, and,
STACIE KINCHER,

      Defendants.

---

## ORDER SUSTAINING PLAINTIFFS' OBJECTION IN PART

---

Before the Court is Plaintiffs' Objections to Magistrate Judge's Order Denying Motions to Restrict and for Sanctions ("Objection"). (ECF No. 245.) The Objection refers to United States Magistrate Judge Gordon P. Gallagher's August 14, 2017 order. (ECF No. 238 (filed under Level 1 Restricted Access).) Defendants filed no response.

For the reasons set forth below the Court sustains Plaintiffs' Objection in most respects. However, the Court defers consideration of sanctions to a later stage of the case.

## I. LEGAL STANDARD

When reviewing an objection to a magistrate judge's non-dispositive ruling, the Court must affirm the ruling unless it finds that the ruling is "clearly erroneous or

contrary to law." Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A); *Ariza v. U.S. West Commc'ns, Inc.*, 167 F.R.D. 131, 133 (D. Colo. 1996). The clearly erroneous standard "requires that the reviewing court affirm unless it on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988) (internal quotation marks omitted). The "contrary to law" standard permits "plenary review as to matters of law," *see* 12 Charles Alan Wright *et al.*, Federal Practice & Procedure § 3069 (2d ed., Apr. 2016 update), but the Court will set aside a magistrate judge's order only if it applied the wrong legal standard or applied the appropriate legal standard incorrectly, *see Wyoming v. U.S. Dep't of Agric.*, 239 F. Supp. 2d 1219, 1236 (D. Wyo. 2002). In short, "[b]ecause a magistrate judge is afforded broad discretion in the resolution of non-dispositive . . . disputes, the court will overrule the magistrate judge's determination only if his discretion is abused." *Ariza*, 167 F.R.D. at 133.

## II. BACKGROUND

Plaintiff A.J. White ("White")[1] lives in federally subsidized housing in Meeker, Colorado. (ECF No. 237 ¶ 47.) White has a history of severe depression and attention deficit/hyperactivity disorder ("ADHD"), and claims that he is disabled by these conditions. (*Id.* ¶ 8.) He relies on his pet cats to help manage his disability, on the recommendation of his mental health professional. (*Id.* ¶ 8, 61–64.) From 2014 to mid-2016, the management of White's apartment complex permitted residents to keep pets as long as the pets provided documented assistance. (*Id.* ¶¶ 52–53.) White obtained

---

[1] A.J.'s father, Lonnie, is also a plaintiff in this lawsuit, but for purposes of this order, "White" refers solely to A.J.

the necessary documentation and lived with his cats without objection from apartment management. (*Id.* ¶¶ 58–60, 65.)

In July 2016, the management tightened its pet policy to require much more documentation regarding companion animals, including a letter from a psychiatrist (a letter from a psychologist or therapist apparently does not suffice) and "evidence of a nexus between the companion animal and the debility attested to by the [psychiatrist]." (*Id.* ¶¶ 88.) White soon filed this lawsuit, claiming that Defendants' new policies discriminate against his disability status in violation of the Rehabilitation Act of 1973, 29 U.S.C. §§ 794 *et seq.*, and the Fair Housing Act, 42 U.S.C. §§ 3601 *et seq.* (*See* ECF No. 1.)

On May 16, 2017, Defendants filed a motion under Federal Rule of Civil Procedure 35 to compel a psychiatric examination of White ("Rule 35 Motion"). (ECF No. 152.) That motion included statements regarding conditions beyond White's admitted depression and ADHD, particularly a diagnosis that—for reasons that will become clear below—the Court will refer to simply as the "Additional Diagnosis." (*Id.* at 2, 3, 7.) It also attached Plaintiffs' May 5, 2017 Rule 26(a)(2) expert disclosure, which listed, among many other persons, a clinical counselor who "treated [White] for major depressive disorder, generalized anxiety disorder, and [the Additional Diagnosis]. [This counselor] may offer his opinion of [White's] mental health condition and its effects . . . ." (ECF No. 152-3 at 6.) It similarly listed a medical doctor who "treated [White] for [the Additional Diagnosis]. [This medical doctor] may offer his opinion of [White's] mental health condition and its effects . . . ." (ECF No. 152-3 at 7.)

The day after Defendants filed their Rule 35 Motion, White filed a restricted

emergency motion to "seal" (*i.e.*, restrict) the Rule 35 Motion and its exhibits ("Motion to Restrict"), arguing that the Additional Diagnosis was private and that Defendants had violated the Protective Order (ECF No. 112) by discussing it in a public filing. (ECF No. 156 at 2–3.) White announced that his counsel had conferred with Defendants about restricting the Rule 35 Motion, but Defendants responded that White had made the Additional Diagnosis public by including it in the Rule 26(a)(2) expert disclosure. (*Id.* at 2 n.1.) This disclosure had not been marked "confidential" per the Protective Order. (*See* ECF No. 152-3.)

White preemptively countered this argument by noting a letter sent to Defendants' counsel on the same day that counsel exchanged expert disclosures. This letter accused Defendants of violating the Protective Order because they had conveyed the Additional Diagnosis to a third party without authorization. (ECF No. 156-3; *see also* Part III.B.2, below.) White also noted that his counsel designated his entire deposition transcript confidential per the Protective Order because the deposition focused significantly on the Additional Diagnosis. (ECF No. 156 at 2.) And, Defendants had only learned of the Additional Diagnosis by reviewing White's medical records, which were produced with a "CONFIDENTIAL" designation. Thus, White argued, Defendants knew that the Additional Diagnosis should be treated as confidential under the Protective Order. (*Id.* at 3.)

White also requested "attorneys' fees and costs incurred in filing this Emergency Motion." (*Id.* at 4.) As grounds, White alleged "repeated violations of the Court's Protective Order in addition to [Defendants'] failure to follow Court procedures [regarding discovery disputes]." (*Id.*)

4

Defendants filed an unrestricted response confirming their view that White's non-confidential expert disclosure showed that the Additional Diagnosis was not confidential. (ECF No. 168 at 3, 7.)[2] Defendants also argued that restriction was improper because the Additional Diagnosis is relevant to resolving White's claim, and restricting any mention of it would deprive the public of its right to understand the Court's eventual reasoning either in favor of or against White's claim. (*Id.* at 4–6.) Moreover, according to Defendants, White testified at his deposition that he has already informed "some people where he works" about the Additional Diagnosis. (*Id.* at 3.) Finally, Defendants say that White's Additional Diagnosis will, at some point, inevitably manifest itself outwardly and therefore be impossible to keep private. (*Id.* at 7.)

In reply, White argued that whether his admitted disabilities (depression and ADHD) are in some sense influenced or caused by the Additional Diagnosis is irrelevant because he only needs to prove that he has a disability; he does not need to prove its source. (ECF No. 197 at 3.) As for Defendants' argument regarding White's expert disclosures, White asserted that "[t]he mere act of providing counsel with this information does not render the information public in any way." (*Id.* at 7.) Furthermore, said White, "[i]f Defendants genuinely believed that disclosures served between counsel were in fact discovery documents, it would have been appropriate for Defendants to notify Plaintiffs of the missing 'CONFIDENTIAL' designation instead of using the disclosures as a 'gotchya' moment." (*Id.*) Concerning Defendants' argument that the Additional Diagnosis will inevitably manifest itself visibly, White countered with excerpts from his deposition where he states that he plans to take steps to prevent that for as

---

[2] White moved to seal this response as well. (*See* ECF No. 170.)

long as possible.  (*Id.* at 10.)  White concluded by "repeat[ing] [his] request for the issuance of civil contempt sanctions."  (*Id.*)

The Court referred White's motion to Judge Gallagher.  (ECF No. 160.)  He agreed with Defendants that restriction was inappropriate.  He noted that White had already "docketed unrestricted filings which contain[] significant information that many individuals would consider to be highly confidential, sensitive, and extremely personal," including information about White's depression and ADHD.  (ECF No. 238 at 3.)  He also noted that White's disabilities and mental impairments are "the very foundation of the litigation" and recognized the parties' "disputes over whether [White] even has to prove his disability(ies) to proceed with this action."  (*Id.* at 5–6.)  Judge Gallagher ultimately reasoned that the public has a right to understand the basis for judicial decisions, and that interest is all the more important when one of the litigants is a public entity, namely, the Meeker Housing Authority.  (*Id.* at 6.)

> [T]he public has a right to know how [Defendants] treated members of their community, whether they followed the law or whether they are liable for the claims lodged against them.  If there are factors which reasonably come into play, as does [White's Additional Diagnosis], the public should know that as well.

(*Id.*)

As for violation of the Protective Order, Judge Gallagher found none "[b]ased on the recitation of how this information was discovered, [and] how it has been utilized." (*Id.* at 7.)

By various orders of the undersigned and of Judge Gallagher, all of the materials implicated in the Rule 35 Motion and the Motion to Restrict, including Judge Gallagher's order, remain restricted awaiting the undersigned's resolution of White's Objection.

## III.  ANALYSIS

### A.    Relevance

To the extent the Additional Diagnosis is relevant, the Court agrees with Judge Gallagher that evidence and discussion of it should not be restricted, because the public has a right to know the basis for the Court's decisions.  However, the Court concludes that it was contrary to law to conclude that the Additional Diagnosis is or will be relevant here.  Defendants' argument regarding relevance is one sentence long and entirely lacking in citation to authority.[3]  It also lacks any inherent sense.  White claims that he is disabled due to depression and ADHD.  Defendants nowhere claim that depression and ADHD do not qualify as disabilities for purposes of the relevant statutes.  Given that, it is incumbent upon Defendants to explain how the Additional Diagnosis, which Defendants suspect to be a source or contributor to White's depression and ADHD, can convert his asserted disabilities into non-disabilities.  Defendants nowhere explained that in their response to the Motion to Restrict—and, notably, they do not attempt to defend Judge Gallagher's conclusion, having not bothered to respond to White's Objection.

Again, White has asserted depression and ADHD as his disabilities.  He has explicitly denied that the Additional Diagnosis is also a basis for his disability claim—and the Court will hold him to that denial.  In that light, the Additional Diagnosis is irrelevant and therefore White has a legitimate interest in maintaining his privacy regarding the Additional Diagnosis.  White's Objection is sustained in this regard.  All documents

---

[3] The Court cannot quote that sentence, or even reproduce it in a reasonably redacted form, without revealing information about the Additional Diagnosis that should not be revealed. For the record, the sentence in question is the fifth sentence of the first full paragraph on page 6 of  ECF No. 168.

(attorney-drafted documents, documents produced in discovery, or otherwise) that reveal the Additional Diagnosis shall remain under Level 1 Restricted Access, and any such document filed in the future shall be filed under Level 1 Restricted Access. Knowledge of and documents relating to the Additional Diagnosis shall be treated as a "CONFIDENTIAL" under the Protective Order.[4]

## B.    Violation of Protective Order & Sanctions

White seeks to hold Defendants in contempt for violating the Protective Order. "To prevail in a civil contempt proceeding, the plaintiff has the burden of proving, by clear and convincing evidence, that a valid court order existed, that the defendant had knowledge of the order, and that the defendant disobeyed the order." *Reliance Ins. Co. v. Mast Const. Co.*, 159 F.3d 1311, 1315 (10th Cir. 1998) (citation omitted) ("*Reliance II*"). "Any ambiguities or omissions in the order will be construed in favor of [the person charged with violating the order]." *Reliance Ins. Co. v. Mast Const. Co.*, 84 F.3d 372, 377 (10th Cir. 1996) ("*Reliance I*").

### 1.    Filing the Rule 35 Motion Without Restriction

White asserts that the Protective Order unambiguously prohibited Defendants from filing the Rule 35 Motion publicly. (ECF No. 156 at 3–4; ECF No. 245 at 12–13.) Surprisingly, however, the Protective Order *is* ambiguous on the question of information included in pleadings.

---

[4] The Court may revisit these restrictions if circumstances change—if, for instance, White chooses to disclose the Additional Diagnosis publicly, or it manifests itself such that it cannot be kept private. However, the Court makes clear that *any* document revealing the Additional Diagnosis must be deemed "CONFIDENTIAL" and, if filed with the Court, filed under Level 1 Restricted Access, *until* the Court decides otherwise. Defendants may **not** take it upon themselves to unilaterally conclude that the Additional Diagnosis has become public knowledge and therefore disregard this Order or the Protective Order.

The Protective Order states that "documents, materials, and/or information" designated "CONFIDENTIAL" "shall not, without the consent of the Party producing it or further Order of the Court, be disclosed *except that* such information may be disclosed to * * * the Court in this case and its employees." (ECF No. 112 ¶ 4(e) (emphasis in original).) As for filing procedures, the Protective Order directs as follows: "In order to keep CONFIDENTIAL Information contained in documents filed with the court out of the public record, the parties will confer prior to filing *any document designated CONFIDENTIAL.*" (*Id.* ¶ 8 (emphasis added).) This procedure presumes that the party is filing a discovery document that the producing party has specifically declared to be confidential, typically by placing a "CONFIDENTIAL" label on the document. (*See id.* ¶¶ 6–8.) Oddly, the procedure says nothing about reciting, describing, or otherwise mentioning confidential information in a motion or other filing or paper.

As for White's expert disclosures, they bore no "CONFIDENTIAL" label. White claims that expert disclosures are not discovery documents. Whether true or not, White's attorneys surely understand that Rule 26 disclosures, including expert disclosures, are routinely filed on the Court's docket in support of various requests for relief (*e.g.*, a motion to strike an untimely disclosed expert's testimony). In the Court's experience, litigants indeed mark such disclosures as confidential under a protective order, if needed. In any event, there is nothing in the Protective Order that prohibits a party from filing a document that has not been designated confidential under the procedures set forth in the Protective Order.

Accordingly, because the Tenth Circuit requires this Court to give Defendants the benefit of any doubt, the Court cannot consider contempt sanctions against Defendants

based on the Rule 35 Motion's public filing.

2. Disclosure to McKenzie

White also claims that contempt is warranted because of Defendants' disclosure of the Additional Diagnosis to Michael McKenzie, one of Defendants' designated experts, who in turn disclosed the Additional Diagnosis to a third party, namely, an employee of the Colorado Housing and Finance Authority who provides advice regarding Section 8 compliance.  (ECF No. 245 at 11–12; ECF No.  156-3 at 9–10.)  At his deposition, McKenzie testified that he never received a copy of the Protective Order, and White says that Defendants never had a legitimate, litigation-related basis to disclose the Additional Diagnosis to McKenzie.  (ECF No. 245 at 12; *see also* ECF No. 112 ¶ 4(d) (Protective Order permits disclosure to experts "to the extent such disclosure is necessary for preparation, trial or other proceedings").)

Notably, disclosure to McKenzie was *not* the basis for contempt sanctions in White's Motion to Restrict.  White alluded to McKenzie with a generic accusation about disclosure "to non-parties, who then continued to disseminate the information to others." (ECF No. 156 at 2.)  But the actual request for sanctions was based on Defendants' choice to file the Rule 35 Motion as a publicly accessible document.  (*See id.* at 3–4.) Defendants' response brief and White's reply brief nonetheless went "into the weeds," so to speak, regarding whether disclosure to McKenzie violated the Protective Order (ECF No. 168 at 8; ECF No. 197 at 8–9) and Judge Gallagher's order shows that he specifically had the McKenzie dispute in mind when he denied sanctions (ECF No. 238 at 7).

The Court finds that Judge Gallagher clearly erred in not considering contempt

sanctions in this circumstance. Defendants learned of the Additional Diagnosis through medical records designated "CONFIDENTIAL." Defendants therefore were not permitted to disclose the Additional Diagnosis to McKenzie without "notify[ing] [him] of the terms of [the] Protective Order." (ECF No. 112 ¶ 5.) McKenzie testified at his deposition that he had never seen the Protective Order and that he had no recollection of being informed by Defendant's attorney "not to share documents that were marked as confidential." (ECF No. 223-2 at 11.) McKenzie also testified that he had never been instructed to keep the Additional Diagnosis confidential. (*Id.* at 12.) This strongly suggests that Defendants' counsel violated the Protective Order. There is also some question—a more factually complex question than the Court is prepared to address in this posture—whether Defendants' counsel disclosed the Additional Diagnosis to McKenzie for a proper litigation purpose.

In short, there is a potential basis for contempt proceedings. However, the Court will not institute such proceedings at this stage of the case, where any contempt penalty would likely be limited to attorneys' fees. *See O'Connor v. Midwest Pipe Fabrications, Inc.*, 972 F.2d 1204, 1211 (10th Cir. 1992). Currently pending is Plaintiffs' Motion for Entry of Judgment and Dismissal Due to Defendants' Litigation Misconduct. (ECF No. 288.) Should the Court grant this motion—a matter the Court will resolve in due course, and on which it has no present opinion—Plaintiffs would surely move for their attorneys' fees. To the extent those fees encompass the entire case (and the Court presumes they will), any award specific to the issues raised in the Objection would turn out to have been a needlessly duplicative exercise. Moreover, the parties will file dispositive motions soon, and to the extent White prevails, he may also be entitled to fees for his

portion of the case.  If the case goes to trial and White prevails, the same circumstance obtains.

The Court accordingly finds that addressing any attorneys' fees at this stage would be an inefficient use of judicial resources.  If, however, White never becomes entitled to fees as a prevailing party, White may move again (at the conclusion of this case) for sanctions specific to the apparent violation of the Protective Order noted above.

Moreover, Defendants' counsel are sternly warned that their behavior in this case is deeply troubling and has caused the Court to question whether they have crossed the line from permissible advocacy into sanctionable harassment and intentional obstruction.  Defendants' counsel's deposition of White is particularly disturbing and, on its face, smacks of purposeful harassment and intimidation.  Other events, such as recent proceedings regarding letters that Meeker Housing Authority sent to its residents falsely accusing Plaintiffs' law firm of legal violations, have given the Court further pause.  (*See, e.g.*, ECF No. 309.)  Accordingly, Defendants' counsel are on notice that the Court is independently considering proceedings regarding sanctions and/or potential referral to relevant attorney disciplinary authorities.  The Court will continue to evaluate the propriety of such actions as this case progresses.

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.  Plaintiffs' Objections to Magistrate Judge's Order Denying Motions to Restrict and for Sanctions (ECF No. 245) is SUSTAINED IN PART;

2.  Magistrate Judge Gordon P. Gallagher's August 14, 2017 order (ECF No. 238) is

OVERRULED except to the extent Plaintiffs seek sanctions because Defendants filed the Rule 35 Motion publicly;

3.  All documents that reveal the Additional Diagnosis shall remain under Level 1 Restricted Access, and any such document filed in the future shall be filed under Level 1 Restricted Access; and

4.  Knowledge of and documents relating to the Additional Diagnosis shall be treated as a "CONFIDENTIAL" under the Protective Order.

Dated this 8th day of March, 2018.

BY THE COURT:

_____
William J. Martinez
United States District Judge