IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 16-cv-2304-WJM-GPG

MEGAN MCFADDEN,
LONNIE WHITE, and
ANTONIO "A.J." WHITE,

    Plaintiffs,

v.

MEEKER HOUSING AUTHORITY, a Property Management Company,
MELINDA PARKER,
MICHELLE BUCKLER,
EDY GEORGE, and,
STACIE KINCHER,

    Defendants.

**ORDER DENYING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT AS A SANCTION, *SUA SPONTE* GRANTING ALTERNATIVE SANCTIONS, AND ORDER TO SHOW CAUSE WHY STEPHEN J. BAITY SHOULD NOT BE ORDERED TO PAY ATTORNEYS' FEES AND COSTS**

Plaintiff Megan McFadden ("McFadden") previously resided in the federally subsidized Karen Court apartment complex in Meeker, Colorado. Plaintiffs Lonnie and A.J. White ("the Whites") are current residents of Karen Court. All Plaintiffs claim that Defendants discriminated against them in violation of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. §§ 794 *et seq.*, and the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601 *et seq.*, based on Defendants' policy (or former policy) concerning disability-assistance pets. McFadden, who moved from Karen Court around the time this lawsuit commenced, also brings a claim under Colorado state law for wrongful withholding of her security deposit.

Before the Court is Plaintiffs' Motion for Entry of Judgment and Dismissal Due to Defendants' Litigation Misconduct ("Motion"). (ECF No. 288.) The basis of this motion is Defendants' alleged non-diligence in, and abuse of, the discovery process. For the reasons explained below, the Court denies Plaintiffs' requested remedy to strike Defendants' affirmative defenses and counterclaims and to enter default judgment against Defendants. The Court *sua sponte* instead excludes certain false testimony, and will order Defendants' former counsel, Mr. Stephen L. Baity,[1] to show cause why he should not be held personally responsible for attorneys' fees and costs Plaintiffs would not have incurred but for his non-diligence.

## I. LEGAL STANDARD

Although Plaintiffs assert that Defendants' alleged discovery violations merit default judgment against them, Plaintiffs do not invoke Federal Rule of Civil Procedure 37(b)(2)(A)(vi), which permits "default judgment against the disobedient party" where the party has "fail[ed] to obey an order to provide or permit discovery." Plaintiffs instead seek entry of default judgment under the Court's inherent authority to assess sanctions. (ECF No. 288 at 3.) *See also Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017) ("Federal courts possess certain inherent powers, not conferred by rule or statute, to manage their own affairs so as to achieve the orderly and expeditious disposition of cases. That authority includes the ability to fashion an appropriate sanction for conduct which abuses the judicial process." (internal quotation marks and citations omitted)).

---

[1] New counsel for Defendants entered their appearance, and Mr. Baity then withdrew, after the Motion became ripe. (*See* ECF Nos. 346–48, 358.) The Court's criticisms of Mr. Baity in this order are directed at him alone, not at Defendants' new counsel.

For guiding standards, Plaintiffs nonetheless cite to cases analyzing Rule 37(b)(2)(A) sanctions. (*See* ECF No. 288 at 3 (citing *Stichting Mayflower Mountain Fonds v. City of Park City, Utah*, 441 F. App'x 568 (10th Cir. 2011); *Lee v. Max Int'l, LLC*, 638 F.3d 1318 (10th Cir. 2011); *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920 (10th Cir. 1992)).) Defendants do the same, although asserting that they have not violated any discovery orders. (*See* ECF No. 294 at 3–4.) Because the parties appear to agree that the Court should apply a Rule 37(b)(2)(A) analysis, the Court will do so, reserving for another day the question of whether and under what conditions a Court's inherent authority to sanction extends to dismissal or default judgment.

The standard for imposing default judgment as a discovery sanction is strict:

> [D]ismissal represents an extreme sanction appropriate only in cases of willful misconduct. In many cases, a lesser sanction will deter the errant party from further misconduct. Because dismissal with prejudice defeats altogether a litigant's right to access to the courts, it should be used as a weapon of last, rather than first, resort.

*Ehrenhaus*, 965 F.2d at 920 (internal quotation marks and citations omitted). "If a judge intends to order a dismissal or default judgment because of discovery violations, the judge should do so only if the judge is impressed to do so by evidence which is clear and convincing." *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 167 F.R.D. 90, 108 (D. Colo. 1996).

The Tenth Circuit has prescribed the following factors to consider: (1) the degree of actual prejudice to the affected party; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; (4) whether the court warned the culpable party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions. *Ehrenhaus*, 965 F.2d at 921.

3

The Court will refer to these as the "*Ehrenhaus* factors." "These factors do not constitute a rigid test; rather, they represent criteria for the district court to consider prior to imposing dismissal as a sanction." *Id.* "Only when the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on their merits is dismissal an appropriate sanction." *Id.* (internal quotation marks omitted).

## II. ANALYSIS

### A. Summary of Accusations and Responses

Before applying the *Ehrenhaus* factors, the Court will first summarize Plaintiffs' accusations of discovery misconduct and Defendants' responses. The Court will designate each accusation according to the outline numbering employed in the parties' briefs (*e.g.*, A-1, D-2, etc.). Most of Plaintiffs' accusations stemmed from a forensic search of the Meeker Housing Authority's sole computer, which Defendants agreed to permit as a compromise to resolve a discovery dispute.

**A-1.** Plaintiffs propounded discovery requests for documents, including documents found on digital devices, in any way touching upon Defendants' pet policies. Plaintiffs received far fewer documents than they expected, and the forensic search uncovered more, namely, Internet search histories conducted in June and July 2016 regarding pet policies, and a template of a compliant pet policy obtained in August 2016. (ECF No. 288 at 4–5.) The Court agrees with Plaintiffs that these are documents Defendants should have produced themselves before the forensic search.

Defendants counter that "Plaintiffs are not prejudiced" because they obtained the documents "by the discovery methodology they proposed and which was agreed to. . . . They have the documents they contend support their claims and they obtained them using the methodology they wanted." (ECF No. 294 at 5.) This no-prejudice argument

4

is a running theme in Defendants' response to nearly all of Plaintiff's accusations, so the Court will not repeat it under each heading, below. The Court addresses it instead in Part II.C.1.b, below.

Defendants further assert that the uncovered documents are irrelevant, or at least that Plaintiffs exaggerate their significance. (*Id.* at 5–6.)

**A-2.** Plaintiffs claim that forensic imaging and public records requests uncovered a March 2017 compliance agreement that Meeker Housing Authority entered into with the U.S. Department of Housing and Urban Development regarding pet policies, thus supposedly confirming that the pet policies at issue in this lawsuit were unlawful. (ECF No. 288 at 5–6.) Defendants respond that this document is irrelevant to their knowledge at the time the pet policies were promulgated, and it is inadmissible under Federal Rule of Evidence 407 as a subsequent remedial measure. (ECF No. 294 at 6.)

**A-3.** Through discovery, Plaintiffs requested documents relevant to their claim that Defendants have retaliated against Plaintiffs for asserting their rights under the Fair Housing Act. Mr. Baity represented to the Court that Defendants searched for and produced the single document responsive to that request. But forensic imaging uncovered 99 responsive e-mails. (ECF No. 288 at 6–7.) Defendants respond that Plaintiffs misconstrue or exaggerate the significance of what they have found. (ECF No. 294 at 7–9.)

**B.** Plaintiffs claim that depositions of certain Defendants show that they did not know or did not care about their duty to preserve and produce documents. (ECF No. 288 at 7–9.) Defendants respond that Plaintiffs have taken the deposition testimony out of context. (ECF No. 294 at 9–11.)

**C.** Accusation "C" is actually twofold.

The first portion of the accusation relates to expert reports. Defendants designated their regular fair housing consultant, Mike McKenzie, as their rebuttal expert. At his deposition, Plaintiffs learned that McKenzie had never seen or approved his rebuttal expert report. It became clear that McKenzie had e-mailed his rebuttal opinions to Mr. Baity, and Mr. Baity had then reformatted those opinions into a stand-alone document, at times altering some of the wording to provide context, and removing any mention of where McKenzie agreed with Plaintiffs' expert. McKenzie did not see that document before Mr. Baity sent it to Plaintiffs' counsel. (ECF No. 288 at 9–10.) Defendants respond that, "[a]lthough [McKenzie] didn't see the final draft of his rebuttal report before it was produced to Plaintiffs, [he] confirmed [that] the opinions in the report accurately reflect his expert opinions in this case." (ECF No. 294 at 13.)

The second portion of this accusation relates to McKenzie's deposition testimony. Specifically, McKenzie was not willing to be referred to as an expert.[2] Defense counsel then asked for a recess. Upon return, Plaintiffs' counsel questioned McKenzie about his conversations with Mr. Baity during the recess, and McKenzie testified that Mr. Baity "recommended that I put my personal beliefs aside to be able to answer your question and say that I consider myself an expert in that I can help a jury understand [a certain topic relevant to this case]." Plaintiffs claim that this constituted improper witness coaching. (ECF No. 288 at 10.) Defendants respond that McKenzie had never before testified as an expert witness and so it was proper to help him understand what Plaintiffs meant when they asked him if he considered himself an

---

[2] His reasoning, which Plaintiffs fail to mention, is that he considered it "arrogant" for anyone to deem themselves an expert. (*See* ECF No. 288-33 at 26.)

6

expert. Defendants also point out, accurately, that Plaintiffs have not filed any motion to exclude McKenzie for lack of expert qualifications. (ECF No. 294 at 13–14.)

**D-1.** Plaintiffs claim that their forensic examination revealed evidence that Defendants fabricated and/or backdated certain notices that they were required to give before increasing the Whites' rent. (ECF No. 288 at 11–13.) Defendants respond that Plaintiffs have done no more than reveal a factual dispute about authenticity that the Court cannot resolve on this record. (ECF No. 294 at 14–15.)

**D-2.** Based on the current claims, affirmative defenses, and counterclaims, one factual dispute needing resolution is whether McFadden left her apartment in a damaged and unsanitary state at move-out in early September 2016. Concerning evidence relating to this dispute, Plaintiffs bring a threefold accusation.

The first portion of the accusation claims that forensic imaging revealed a document suggesting that a new tenant moved in soon after McFadden moved out—specifically, a move-in form dated October 1, 2016—contrary to Defendants' representations that it took about three months to repair McFadden's apartment. (ECF No. 288 at 13–14.) Defendants respond that the move-in form was obviously a draft because it was unsigned. (ECF No. 294 at 16.)

The second portion of the accusation relates to certain photographs. Plaintiffs claim that photographs Defendants produced supposedly depicting the damage to McFadden's apartment were taken about forty minutes after Defendants received notice of this lawsuit, rather than several days earlier (as Defendants have represented). The implication is that Defendants retaliated against McFadden by creating the damage themselves or photographing damage in some other unit, and then representing it to be

McFadden's responsibility. Buttressing this argument, Plaintiffs point to the move-out inspection form, which listed no damage. (ECF No. 288 at 14.) In response, Defendants stand by the original date they ascribe to those photographs and assert that Plaintiffs' evidence suggesting a different date, and the blank move-out inspection form, create a factual dispute that cannot be resolved on this record. (ECF No. 294 at 16–17.)

The third portion of this accusation centers on deposition testimony from Defendant Kincher (the property manager), who testified that McFadden was not present for her move-out inspection because McFadden had not provided any notice that she would be moving out. Plaintiffs, however, have discovered an e-mail exchange between McFadden and Kincher showing that McFadden had indeed given prior notice of her move-out date and Kincher had confirmed receipt of that notice. (ECF No. 288 at 14–15.) Quite surprisingly, Defendants' only response is that Plaintiffs' accusations do not satisfy the elements of perjury under the Colorado criminal code. (ECF No. 294 at 17.)

**D-3.** Plaintiffs point to forensic evidence suggesting that the Meeker Housing Authority's board of directors reached a particular decision (the details of which are not relevant for present purposes) in July 2016, contrary to Defendants' position that the decision was reached in August 2016. (ECF No. 288 at 17–18.) Defendants respond that there is "confusing and possibly conflicting evidence" about the date of the decision, but there is no dispute that the decision was made. (ECF No. 294 at 18–19.)

**D-4.** Kincher testified on the Meeker Housing Authority's behalf as its Rule 30(b)(6) deponent. At that deposition, Plaintiff's counsel specifically asked whether

8

Meeker Housing Authority had exchanged e-mails with certain specified parties on certain specified topics. Kincher testified that no such exchanges took place. Forensic imaging, subpoenas, and open records requests yielded 37 e-mails involving the specified parties and topics. (ECF No. 288 at 18.) Defendants respond that the e-mails contain few substantive statements, are mostly cumulative e-mail chains, and are generally not relevant. (ECF No. 294 at 20.)

**B.      General Observations**

The foregoing raises or implies many disputes about admissibility of documents and testimony, or proper use of such evidence once admitted. The Court makes no ruling at this time on any of those issues. The Court's focus is on whether discovery misconduct occurred, and if so, whether it merits default judgment as a sanction.

On that score, the Court notes that Defendants never argue that the documents Plaintiffs discovered through their own efforts were *not responsive* to any discovery request. Defendants express their opinion that some documents are irrelevant, but Defendants have not attempted to justify their non-production of any document on grounds that it does not fall within a discovery request.

In addition, Defendants do not provide any description of their efforts to search for and preserve documents. Nor do they provide any explanation of how they could have overlooked the materials Plaintiffs eventually discovered through the forensic process.

Consequently, the existence of discovery misconduct is unrebutted. The question is whether default judgment is the proper sanction.

**C.      The *Ehrenhaus* Factors**

The Court now turns to the five *Ehrenhaus* factors.

1. <u>Prejudice</u>

   a. *Falsified Evidence*

The only prejudice Plaintiffs assert in their opening brief is the prejudice inherent in falsified testimony and documents: "The submission of falsified evidence substantially prejudices an opposing party by casting doubt on the veracity of all of the culpable party's submissions throughout litigation." *Garcia v. Berkshire Life Ins. Co. of Am.*, 569 F.3d 1174, 1180 (10th Cir. 2009). (*See* ECF No. 288 at 19.) This is a very serious matter. However, on the present record, the accusations of fabricated documents are colorable but not clear and convincing.

As for falsified deposition testimony, however, Defendants' argument to the effect of "at least it wasn't criminal perjury" all but concedes that Kincher testified falsely at her deposition as to certain matters. Plaintiffs therefore face some prejudice on this account.

The Court does not agree with Plaintiffs that Mr. Baity fabricated portions of McKenzie's expert report. The Court does not condone Mr. Baity's slapdash approach to that matter, but the Court has compared McKenzie's original to the document Mr. Baity represented to be McKenzie's expert report. Most of the report is a verbatim copy of McKenzie's original words. The alterations are either for clarity (*e.g.*, replacing pronouns with proper names) or are a fair paraphrase of McKenzie's words. In the present circumstances, moreover, the Court sees no significance in Mr. Baity removing McKenzie's statements where he expressed agreement with Plaintiff's expert's opinions. McKenzie was a rebuttal expert and so his failure to rebut some portion of Plaintiff's expert's report naturally demonstrates lack of disagreement. Finally, Plaintiffs do not dispute Defendants' representation that McKenzie endorsed the Baity-drafted

10

document as an accurate reflection of his opinions. The Court therefore sees no prejudice on this account.

The Court also does not agree with Plaintiffs that Mr. Baity improperly coached McKenzie at his deposition. It appears McKenzie had a genuine philosophical objection to declaring himself an expert, and Mr. Baity helped him to understand that he could still qualify as an expert for testimonial purposes despite his personal beliefs. Accordingly, Plaintiffs did not suffer prejudice.

      b.  *The Need to Conduct a Forensic Examination*

In their reply brief, Plaintiffs address Defendants' running argument that Plaintiffs suffered no prejudice because they obtained the documents they were looking for through the method they proposed (forensic imaging). Plaintiffs counter that forensic imaging required "great cost and time" that could have been avoided if Defendants had simply taken their discovery obligations seriously. (ECF No. 301 at 2–3.) The Court agrees.

If the instant motions practice demonstrates anything, it is, *at least*, that Mr. Baity approached the discovery process with an inexcusable lack of diligence. In particular, he made no effort to ensure that his clients took their discovery obligations seriously. Because Plaintiffs' attorneys ended up doing Mr. Baity's work for him, Plaintiffs suffered prejudice in time and expense.

    2.  <u>Interference with the Judicial Process</u>

Without question, false testimony and lack of discovery diligence interfere with the core judicial goal of truth-seeking.

    3.  <u>Culpability of the Litigant</u>

To the extent Kincher testified falsely, she bears significant culpability. As for the

11

remainder of the prejudice Plaintiffs suffered, the Court, on this record, can only say that Mr. Baity bears culpability.  Again, he made no effort to ensure that his clients took their discovery obligations seriously, and he himself took a systematic foot-dragging approach to the discovery process.

   4.  <u>Prior Warnings of Dismissal as a Likely Sanction</u>

Defendants have never previously been warned that dismissal was a likely sanction if their conduct persists.

   5.  <u>Efficacy of Lesser Sanctions</u>

By an order awarding attorneys' fees and costs related to the forensic imaging process, and incurred in connection with the Motion, Plaintiffs' monetary prejudice could be cured.

As for false testimony, the Tenth Circuit has stated that the remedy of exclusion is "[not] always enough to deter discovery misconduct.  Litigants would infer that they have everything to gain, and nothing to lose, if manufactured evidence merely is excluded while their lawsuit continues."  *Garcia*, 569 F.3d at 1180 (internal quotation marks omitted).  Thus, dismissal or default judgment is potentially appropriate.  *Id.*  Nonetheless, exclusion remains an available remedy, and it would cure at least some of the prejudice Plaintiffs now face.

   6.  <u>Synthesis</u>

The Court has given careful consideration to Plaintiffs' arguments.  Although Plaintiffs' claims are disturbing, the Court concludes on this record that lesser sanctions should be employed before considering default judgment, particularly now that Defendants are represented by new counsel.  The Court orders the following alternative sanctions *sua sponte* (Plaintiffs have not asked for lesser sanctions in the alternative to

12

default judgment).

First, Defendant Kincher will not be permitted to testify that McFadden provided no notice that she would be moving out. The Court will enforce this exclusion when it addresses Plaintiffs' pending summary judgment motion (ECF No. 354), and at trial.

Second, the Court will consider whether Mr. Baity should be held personally responsible for Plaintiffs' attorneys' fees and costs related to the forensic imaging process, and incurred in connection with the Motion. Because Mr. Baity was not warned ahead of time that this might be a possible outcome, the Court will not decide whether to award those fees and costs without first giving him an opportunity to be heard. The Court will therefore order him to show cause why fees and costs should not be awarded against him as a sanction for his failure to take his discovery responsibilities seriously.

### III. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Plaintiffs' Motion for Entry of Judgment and Dismissal Due to Defendants' Litigation Misconduct (ECF No. 288) is DENIED;

2. The Court *sua sponte* orders that Defendant Stacie Kincher (testifying on her own behalf or on behalf of Defendant Meeker Housing Authority) shall not be permitted to testify that Plaintiff McFadden failed to provide notice of her move-out; and

3. Defendants' former counsel, Mr. Stephen L. Baity, is ORDERED TO SHOW CAUSE, on or before **July 25, 2018**, why he should not be ordered to pay Plaintiffs' reasonable attorneys' fees and costs related to Plaintiffs' efforts to

forensically image the Meeker Housing Authority computer and to search within and produce the documents so obtained, and incurred in connection with the Motion. The Clerk will serve a copy of this Order on Attorney Baity via the CM/ECF system as an Ad Hoc addressee of this Order.

Dated this 9th day of July, 2018.

BY THE COURT:

_____
William J. Martinez
United States District Judge