IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 16-cv-2304-WJM-GPG

MEGAN MCFADDEN,
LONNIE WHITE, and
ANTONIO "A.J." WHITE,

    Plaintiffs,

v.

MEEKER HOUSING AUTHORITY, a Property Management Company,
MELINDA PARKER,
MICHELLE BUCKLER,
EDY GEORGE, and,
STACIE KINCHER,

    Defendants.

---

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO STRIKE AFFIRMATIVE DEFENSES AND DISMISS COUNTERCLAIMS**

---

    Plaintiff Megan McFadden ("McFadden") previously resided in the federally subsidized Karen Court apartment complex in Meeker, Colorado. Plaintiffs Lonnie and A.J. White ("the Whites") are current residents of Karen Court. All Plaintiffs claim that Defendants discriminated against them in violation of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. §§ 794 *et seq.*, and the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601 *et seq.*, based on Defendants' policy (or former policy) concerning disability-assistance pets. McFadden, who moved from Karen Court around the time this lawsuit commenced, also brings a claim under Colorado state law for wrongful withholding of her security deposit.

    Before the Court is Plaintiffs' Motion to Dismiss and to Strike Allegations,

Affirmative Defenses, and Counterclaims ("Motion").  (ECF No. 260.)  The Motion attacks Defendants' Answer to Second Amended Complaint, Counterclaim Against Plaintiff Megan McFadden, Counterclaim Against Lonnie and A.J. White, and Jury Demand ("Second Amended Answer").  (ECF No. 253.)  Plaintiffs argue that the entire Second Amended Answer must be stricken for failure to obtain leave to include certain new allegations within it.  Plaintiffs alternatively claim that the new allegations fail on their merits.

For the reasons explained below, the Court grants the Motion in part and denies it in part.

## I. PROCEDURAL CHALLENGE

Plaintiffs claim that the Second Amended Answer "contains four new affirmative defenses, fifteen new general allegations, and two new counterclaims [against the Whites]," along with "minor but substantive changes to the allegations raised against Ms. McFadden."  (ECF No. 260 at 2 (footnote omitted).)  Plaintiffs argue that the Court must strike these new portions of the Second Amended Answer because Defendants did not obtain leave to file them.  (*Id.* at 2–4.)  Plaintiffs claim that Defendants' failure to obtain leave is all the more striking because the Court previously admonished Defendants for filing an earlier amended answer that added claims and allegations the Court had not authorized.  (*See* ECF No. 243 at 3.)

There is a significant difference between Defendants' earlier answer and the Second Amended Answer.  In the earlier situation, there was no intervening amended complaint from Plaintiffs.  Defendants simply wanted to amend their answer, ostensibly to remove certain affirmative defenses, and the Court granted leave to do so.

2

Defendants then removed the affirmative defenses *and* pleaded new ones. Although the Court agreed that the new affirmative defenses were somewhat related to previously pleaded defenses, the Court nonetheless found Defendants' conduct improper: "a plaintiff may not unilaterally file an amended complaint to elaborate on previously pleaded causes of action; and the Court sees no reason why a defendant should not be held to the same standard." (*Id.*)

With the Second Amended Answer, however, Defendants were not amending of their own initiative. They were answering Plaintiffs' newly filed Second Amended Complaint. (ECF No. 237.) Plaintiffs—who fail to acknowledge this distinction until their reply brief—apparently believe that a defendant, when answering an amended complaint, must adhere strictly to the previous answer save for responding to new material in the amended complaint. (*See* ECF No. 289 at 3–6.) Plaintiffs cite no authority for this proposition and the Court is unwilling to hold as much, at least as a general matter. Such a holding invites petty motion practice about what material in the amended complaint and amended answer can be considered truly "new."

Accordingly, the Court rejects Plaintiffs' argument that the Second Amended Answer must be stricken because Defendants did not obtain leave to include the new material contained within it. The Court thus turns to Plaintiffs arguments on the merits.

## II. LEGAL STANDARD

Defendants' new counterclaims may be attacked under Federal Rule of Civil Procedure 12(b)(6), which permits the Court to dismiss for "failure to state a claim upon which relief can be granted." The Rule 12(b)(6) standard requires the Court to "assume the truth of the [claimant's] well-pleaded factual allegations and view them in the light

3

most favorable to the [claimant]." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). In ruling on such a motion, the dispositive inquiry is "whether the complaint [or counterclaim] contains 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (internal quotation marks omitted). "Thus, 'a well-pleaded complaint [or counterclaim] may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Id.* (quoting *Twombly*, 550 U.S. at 556).

Defendants' new affirmative defenses may be attacked under Rule 12(f), which permits a court to "strike from a pleading an insufficient defense." "An affirmative defense is insufficient if, as a matter of law, the defense cannot succeed under any circumstance." *FDIC v. Isham*, 782 F. Supp. 524, 530 (D. Colo. 1992).

### III.  ANALYSIS

**A.     Counterclaims**

In a previous answer, Defendants pleaded certain affirmative defenses accusing the Whites of not disclosing their full income, and therefore receiving more of a federal subsidy than they were entitled to receive. (*See* ECF No. 243 at 3–4.) The Court struck these affirmative defenses because the federal government, not Defendants, paid the subsidy, and there was no allegation that the federal government was pursuing Defendants for the overpayments. (*Id.*) In other words, Defendants suffered no harm from Plaintiffs' alleged underpayment of rent.

4

In the Second Amended Answer, Defendants now assert that the Whites entered into a repayment agreement *with Defendants*, but have not made those payments. (ECF No. 253 at 36–37.) Thus, Defendants assert a breach of contract counterclaim. (*Id.* at 37–38.) Plaintiffs attack this counterclaim as if it were still a request to recover overpayments due to the federal government. (ECF No. 260 at 4–5.) It is frankly unclear why the Whites must make repayments to Defendants—there is no allegation that Defendants must turn over those repayments to the federal government. But it *is* clear that Defendants now allege the Whites' failure to pay money owed under a contract with Defendants. Accordingly, this counterclaim does not fail for lack of harm to Defendants. Plaintiffs bring no other attack on this counterclaim beyond their belief that Defendants needed this Court's leave to file it. (*See id.* at 5.) The Court has already rejected this argument. Thus, the Court will deny Plaintiffs' Motion as to Defendants' breach of contract counterclaim.

Defendants plead a second counterclaim against the Whites, namely, fraud based on the Whites' alleged failure to disclose their full income. However, this counterclaim is connected directly to calculation of the federal subsidy, and the only harm Defendants claim is the allegedly improper "rent subsidies paid on behalf of the Whites." (ECF No. 253 at 38, ¶¶ 30–31, 35.) Unlike the breach of contract counterclaim, this fraud counterclaim presents precisely the same problem inherent in the affirmative defenses the Court previously struck. If any person or entity was harmed by the Whites' allegedly improper receipt of rent subsidies, it was the federal government. Accordingly, the Court grants Plaintiffs' Motion as to Defendants' fraud counterclaim against the Whites.

## B.     Affirmative Defenses

### 1.     Affirmative Defenses 1 & 2

Defendants' first and second affirmative defenses in the Second Amended Answer raise defenses and immunities established by Colorado statute.  (*See* ECF No. 253 at 34.)  Plaintiffs contend that state statutes cannot create a defense or immunity to a federal cause of action.  (ECF No. 260 at 7.)  Defendants agree and therefore limit these defenses to the lone state-law claim asserted against them, *i.e.*, McFadden's claim for return of her security deposit.  (ECF No. 279 at 6.)  In reply, Plaintiffs raise several new arguments against these affirmative defenses.  (ECF No. 289 at 6–7.)  Having been raised for the first time in the reply brief, these arguments are forfeited for purposes of the Motion.  *See United States v. Harrell*, 642 F.3d 907, 918 (10th Cir. 2011).  With the understanding that Affirmative Defenses 1 and 2 are limited to McFadden's state-law claim, Plaintiffs' Motion will be denied as to those affirmative defenses.

### 2.     Affirmative Defense 3

Defendants' third affirmative defense asserts that "Plaintiffs' claims are barred by fraud and misrepresentation on the part of Plaintiffs."  (ECF No. 253 at 34.)  Plaintiffs argue—and Defendants do not dispute—that this is essentially an unclean hands defense.  (ECF No. 260 at 8.)

In *McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352 (1995), the Supreme Court held that unclean hands was not a defense to liability under the Age Discrimination in Employment Act ("ADEA").  *Id.* at 357–60.  The Supreme Court reasoned that the ADEA was part of Congress's more general effort to eliminate invidious discrimination in the workplace, and that the goal would be frustrated if later-

6

discovered evidence showed that a person terminated for a discriminatory reason could have been terminated for a nondiscriminatory reason (*e.g.*, stealing trade secrets). *See id.* Thus, the Court said, "[w]e have rejected the unclean hands defense where a private suit serves important public purposes." *Id.* at 360.

Plaintiffs cite a number of district court decisions applying the reasoning of *McKennon* to the FHA. *See Mancuso v. Douglas Elliman LLC*, 808 F. Supp. 2d 606, 631 (S.D.N.Y. 2011); *Utah Labor Comm'n v. Paradise Town*, 660 F. Supp. 2d 1256, 1263 (D. Utah 2009); *see also Ramirez v. Greenpoint Mortg. Funding, Inc.*, 268 F.R.D. 627, 638 (N.D. Cal. 2010). Defendants' only response is that these cases are not binding and the Court should not decide whether to accept their reasoning at this phase of the litigation. (ECF No. 279 at 6.) However, Defendants have not explained what could be gained by waiting until a later juncture in the case.

The Court finds the foregoing cases persuasive and therefore joins them in holding that unclean hands is not a defense to liability under the FHA. The Court further holds that the same reasoning extends to the Rehabilitation Act. Consequently, the Court will grant Plaintiffs' Motion as to Defendants' third affirmative defense.[1]

### 3. Affirmative Defense 4

Defendants' fourth affirmative defense is a claim for attorneys' fees under various federal and state statutes. (ECF No. 253 at 34.) Plaintiffs argue that a claim for attorneys' fees is not an affirmative defense. (ECF No. 260 at 10.) Defendants, in response, state that they "continue to assert that they are entitled to attorney fees, but

---

[1] *McKennon* permits consideration of unclean hands as part of fashioning an appropriate remedy, particularly any prospective remedy. *See* 513 U.S. at 360–63. No party has addressed this possibility, and so the Court makes no ruling on it at this time.

7

concede that this assertion is not appropriately labeled as an affirmative defense." (ECF No. 279 at 7.) Given this concession, the Motion will be granted as to Defendants' fourth affirmative defense.

## IV. CONCLUSION

For the reasons set forth above, Plaintiffs' Motion to Dismiss and to Strike Allegations, Affirmative Defenses, and Counterclaims (ECF No. 260) is GRANTED as to Defendants Affirmative Defenses 3 and 4 and Defendants' second counterclaim asserted against the Whites, but otherwise DENIED.

Dated this 10th day of July, 2018.

BY THE COURT:

_____
William J. Martinez
United States District Judge