**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 1 – VERDICT AS TO LIABILITY – DAMAGES ONLY IN ISSUE – STATEMENTS OF THE CASE**

I will now explain the claims of each party to the case and law governing the case.  Please pay close attention to these instructions.  You must all agree on your verdict, applying the law as you are now instructed to the facts as you find them to be.

The parties to this case are Plaintiffs Megan McFadden, A.J. White, and Lonnie White (collectively "Plaintiffs") and Defendant Meeker Housing Authority ("Defendant MHA").  Plaintiffs have brought this lawsuit primarily alleging violations of their rights under the Fair Housing Act and Rehabilitation Act.

Plaintiffs claim that they are disabled individuals who suffered from discrimination at the hands of Defendant Meeker Housing Authority during the summer of 2016.  Specifically, Plaintiffs contend that throughout that summer, Defendant MHA repeatedly refused to provide Plaintiffs with reasonable accommodations despite their disability-related need to live with assistance animals in their homes.  Plaintiffs also allege that Defendant MHA unlawfully interfered with their rights and retaliated against them by serving them with Notices of Infractions and Violations, Notices to Vacate, and threats of eviction through September 2016.  Plaintiff McFadden alleges that after being forced to leave her home based on these threats, Defendant MHA also failed to return to her the $50 security deposit she paid at the time she moved into her unit.

Plaintiffs filed the present lawsuit on September 13, 2016.  Plaintiffs allege that as a result of filing this lawsuit, Defendant further retaliated against them and interfered with their federally-protected rights.  Specifically, Plaintiffs claim that Defendant pursued frivolous counterclaims against them, using the threat of a lawsuit to retaliate against Plaintiffs and to dissuade them from continuing in this case.  Plaintiffs Lonnie and A.J. White also contend that on account of filing this lawsuit, Defendant MHA engaged in a new form of harassing behavior towards them, including unlawfully terminating their housing subsidy, which ultimately resulted in their constructive eviction in October 2017.

Defendant claims FILL IN.

I have determined as a matter of law that Defendant discriminated against Plaintiffs Megan McFadden, A.J. White, and Lonnie White by failing to provide them reasonable accommodations during the summer of 2016.  Because I have found these facts to be true, the only matter remaining is what damages, if any, are owed to Plaintiffs on their discrimination claims.  You are also to decide whether Defendant is liable to Plaintiffs on their remaining claims for relief, which are referenced above and detailed in the instructions below.

1

The Court's decision that the Defendant discriminated against Plaintiffs in violation of the Fair Housing Act and Rehabilitation Act should not influence you in deciding these remaining issues.

**Authority:** CJI-Civ. 2:5 (2019)

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 2 – BURDEN OF PROOF:**
**PREPONDERANCE OF EVIDENCE**

This is a civil case. The plaintiffs are the parties who brought this lawsuit. The defendant is the party against whom the lawsuit was filed.  Each Plaintiff has the burden of proving each of its claims by what is called a "preponderance of the evidence." That means the Plaintiff has to prove to you, in light of all the evidence, that what they claim to have happened is more likely so than not so. To say it differently, if you were to put the evidence favorable to the Plaintiff and the evidence favorable to the Defendant on opposite sides of the scales, the Plaintiff would have to make the scales tip somewhat on their side, even if only by the smallest margin. If the Plaintiff fails to meet this burden, the verdict must be for the Defendant on that claim. If you find after considering all the evidence that a claim or fact is more likely so than not so, then the claim or fact has been proved by a preponderance of the evidence.

In determining whether any fact has been proved by a preponderance of evidence, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of which side may have called them, and all exhibits received in evidence, regardless of which side may have produced them.

You may have heard of the term "proof beyond a reasonable doubt." That is a stricter standard of proof and it applies only to criminal cases. It does not apply in civil cases such as this. You should, therefore, put it out of your minds.

**Authority:** Model Civil Jury Instructions for the District Courts of the Third Circuit § 1.10 (2018).

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 3 – EVIDENCE — GENERAL**

The evidence in the case consists of the sworn testimony of all the witnesses, regardless of who many have called them; all exhibits which have been received in evidence, regardless of who may have introduced them; all facts which have been admitted or stipulated (agreed to); all facts and events which have been judicially noticed; and all stipulations stated in these instructions.

Statements and arguments of the lawyers for the parties are not evidence in this case.  When, however, the lawyers on both sides stipulate or agree as to the existence of a fact, the jury must, unless otherwise instructed, accept the stipulation and regard that fact as proved.  No adverse inference should be drawn from the fact that evidence is introduced by way of stipulation rather than through live testimony.

In deciding the facts, you must consider only the evidence received at trial or stipulations included in these instructions.  Evidence offered at trial and rejected or stricken by the Court must not be considered by you.  Statements, remarks, arguments, and objections by counsel and remarks of the Court not directed to you are not evidence.

While you must consider only the evidence in this case, you are permitted to draw reasonable inferences from the testimony and exhibits, inferences you feel are justified in the light of common experience.  An inference is a conclusion that follows from the evidence as a matter of reason and common sense.

When the Court declares it has taken judicial notice of some fact or event, the jury must accept that fact or event as proved.

**Authority:** CJI-Civ. 3:8 (2019); Tenth Circuit Criminal Pattern Jury Instructions § 1.07 (2018) ("While you must consider only the evidence in this case, you are permitted to draw reasonable inferences from the testimony and exhibits, inferences you feel are justified in the light of common experience.").

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 4 – EVIDENCE — DIRECT AND CIRCUMSTANTIAL**

There are two types of evidence that you may use in reaching your verdict.  One type of evidence is called "direct evidence."  An example of "direct evidence" is when a witness testifies about something that the witness knows through his or her own senses — something the witness has seen, felt, touched, heard or did.  If a witness testified that he saw it raining outside, and you believed him, that would be direct evidence that it was raining.

The other type of evidence is circumstantial evidence.  "Circumstantial evidence" is proof of one or more facts from which you could find another fact.  For example, if someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

You should consider both kinds of evidence that are presented to you.  The law makes no distinction in the weight to be given to either direct or circumstantial evidence. You are to decide how much weight to give any evidence.

**Authority:** Model Civil Jury Instructions for the District Courts of the Third Circuit § 1.6 (2018).

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 5 – EVIDENCE – PREPONDERANCE NOT DETERMINED BY NUMBER OF WITNESSES**

The weight of evidence is not necessarily determined by the number of witnesses testifying to a particular fact.

**Authority:** CJI-Civ. 3:12 (2019)

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 6 – EVIDENCE -- EXPERT WITNESSES**

A witness qualified as an expert by education, training, or experience may state opinions.  You should judge expert testimony just as you would judge any other testimony.  You may accept it or reject it, in whole or in part.  You should give the testimony the importance you think it deserves considering the witness's qualifications, the reasons for the opinions, and all of the other evidence in the case.  If you should decide the opinion of an expert witness is not based upon sufficient education or experience, or if you should conclude the reasons given in support of the opinion are not sound, or if you feel the expert's opinion is outweighed by other evidence, you may disregard the opinion entirely.

**Authority:** CJI-Civ. 3:15 (2019); Model Final Jury Instructions (Civil), J. Christine Arguello (D. Colo.), Instruction No. 11.

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 7 – EVIDENCE -- CREDIBILITY OF WITNESSES**

You are the sole judges of the credibility of the witnesses and the weight to be given their testimony.  You should take into consideration their means of knowledge, strength of memory and opportunities for observation; the reasonableness or unreasonableness of their testimony; the consistency or lack of consistency in their testimony; their motives; whether their testimony has been contradicted or supported by other evidence; their bias, prejudice or interest, if any; their manner or demeanor upon the witness stand; and all other facts and circumstances shown by the evidence that affect the credibility of the witnesses.

Based on these considerations, you may believe all, part, or none of the testimony of a witness.

**Authority:** CJI-Civ. 3:16 (2019).

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 8 – EVIDENCE -- DEPOSITIONS**

During the trial of this case, certain testimony was presented to you by way of deposition consisting of sworn recorded answers to questions asked of the witness in advance of the trial by one or more of the attorneys for the parties to the case.  The testimony of a witness who, for some reason, cannot be present to testify from the witness stand may be presented by reading the deposition.  Such testimony is entitled to the same consideration, and is to be judged as to credibility, and weighed, and otherwise considered by you in the same way as if the witness had been present and had testified from the witness stand.

**Authority:**  3 Fed. Jury Prac. & Instr. § 102:23 (6th ed.); *see also* CJI-Civ. 3:10, 3:11 (2019).

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 9 – EVIDENCE – PRIOR INCONSISTENT STATEMENTS**

A witness may be discredited or impeached by contradictory evidence or by evidence that at some other time the witness has said or done something that is inconsistent with the witness's present testimony.

If you believe any witness has been impeached and thus discredited, it is your exclusive province to give the testimony of that witness such credibility, if any, as you think it deserves.

If a witness is shown knowingly to have testified falsely concerning any material matter, you have a right to distrust such witness's testimony in other particulars and you may reject all the testimony of that witness or give it such credibility as you think it deserves.

An act or omission is "knowingly" done if it is done voluntarily and intentionally, and not because of mistake or accident or other innocent reason.

**Authority:** FED-JI § 105:04; *Kelsey v. Wal-Mart Stores, Inc.*, No. C-1-98-216 (S.D. Ohio); Eleventh Circuit Pattern Jury Instructions (Civil Cases) § 3.5.1 (2019).

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 10 – EVIDENCE -- NO SPECULATION**

Any finding of fact you make must be based on probabilities, not possibilities. You should not guess or speculate about a fact.

**Authority:** CJI-Civ. 3:4 (2019).

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 11 – STIPULATED FACTS**

The Parties have stipulated to certain facts and agree that these facts can be taken as true without further proof. The stipulated facts are as follows:

1. Defendant Meeker Housing Authority ("MHA") manages Meeker Family and Elderly Housing located at 980 Karen Court, Meeker, Colorado 81641 (referred to interchangeably as "MHA" or "Karen Court").

2. Karen Court, through Defendant MHA, is financially subsidized by the U.S. Department of Housing and Urban Development ("HUD") through HUD's Project Based Section 8 Subsidy Program.  Through this program, tenants pay a significantly reduced rent based on their income.

3. Prior to the initiation of this lawsuit, Plaintiffs lived in Karen Court and received subsidized housing based on their low incomes.

4. Melinda Parker was, at all relevant times, a Board Member of Defendant MHA.  In her role as Board Member, Ms. Parker was responsible for adopting and implementing policies for Defendant MHA.

5. Michelle Buckler was, at all relevant times, a Board Member of Defendant MHA.  In her role as Board Member, Ms. Buckler was responsible for adopting and implementing policies for Defendant MHA.

6. Edy George was, at all relevant times, a Board Member of Defendant MHA.  In her role as Board Member, Ms. George was responsible for adopting and implementing policies for Defendant MHA.

7. Stacie Kincher was, at all relevant times, the Executive Director of Defendant MHA.  In her role as Executive Director, Ms. Kincher was responsible for enforcing policies for Defendant MHA.

8. Rent at Karen Court is based on income, as the landlord receives subsidies from the federal government through HUD to make up the difference between the reduced rent and market value.

9. In February 2014, Lonnie and A.J. White moved in to a subsidized apartment at Karen Court.

10. When this lawsuit was initiated, the Whites paid subsidized rent in the amount of $125.00 per month.

11. On July 20, 2016, Lonnie White went to Defendant MHA's Board of Directors meeting to request a reasonable accommodation on behalf of his son A.J. White,

specifically that Defendant MHA waive its no-pet policy for A.J.'s two companion animals.

12. Lonnie White requested that Defendant MHA waive the no-pet policy and $300 pet fee in order for A.J. to keep his two companion cats in the unit.

13. On July 21, 2016, the day after the board meeting, Executive Director Kincher sent Lonnie White a letter denying his request to have the $300 nonrefundable pet fee waived.

14. Six days later, on July 27, 2016, Defendant revised its pet policy.

15. The July 27, 2016 pet policy revision mandates, among other things, that all residents who are eligible to keep a companion animal must:
   - Demonstrate that they have the physical and financial capability to care for the companion animal;
   - Provide a letter from a licensed psychiatrist attesting to the need for a companion animal; and
   - Provide evidence of a nexus between the companion animal and the debility attested to by the licensed professional.

16. In the July 27, 2016 no-pet policy revision, Defendant also set forth rules for residents with companion animals, including:
   - One (1) companion animal maximum per household
   - Residents shall not permit their companion animal to disturb, interfere, or diminish the peaceful enjoyment of other residents including but not limited to growling, barking, howling, and chirping.
   - If companion animals are left unattended for a period of twelve hours or more, the MHA may enter the dwelling unit and remove the companion animal.
   - Damages caused by a companion animal will be withheld from a required $300.00 non-refundable security deposit.

17. The July 27, 2016 no-pet policy revision also states, "The privilege of maintaining a companion animal in a facility owned/operated by the Meeker Housing Authority shall be subject to the rules set forth above. This privilege may be revoked at any time, subject to the Meeker Housing Authority Board of Directors . . . ."

18. On August 5, 2016, Defendants sent the Whites a 10-day notice of violation and infraction for having a "pet" in their apartment.

19. On August 16, 2016, Defendants sent Lonnie a 30-Day Notice to Vacate.

20. Plaintiff Megan McFadden is a mother of two children.  At the time this lawsuit was initiated, her daughter Alivia was eight-years-old and her son Luke was three-years-old.

21. In December 2015, Ms. McFadden moved into a subsidized apartment at Karen Court where, because of her low income, she paid no rent.

22. On July 25, 2016, Ms. McFadden asked Executive Director Kincher for a reasonable accommodation, specifically that MHA's no-pet policy and pet fee be waived for her companion animal.

23. On July 27, 2016, Defendants sent Megan a 30-Day Notice to Vacate, citing her violations of the no-pet policy.

24. Defendant MHA must comply with the Fair Housing Act.

25. Defendant MHA must comply with the Rehabilitation Act.

26. After Plaintiffs initiated this lawsuit, Defendant MHA brought one counterclaim against Ms. McFadden for alleged breach of contract and two counterclaims against the Whites for alleged breach of contract and deceit based upon fraud.

27. In June 2018, Defendant MHA withdrew its counterclaims against Plaintiffs.

The parties' stipulation means that you must accept these facts as true.

**Authority:** CJI-Civ. 1:13 (2019); Final Pre-Trial Order [ECF No. 410]; Scheduling Order [ECF No. 94].  Note: The last two facts are not included in the PTO stipulations, but Plaintiffs believe that they cannot be disputed given they are part of the procedural posture of the case.

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 12 – AGENCY**

You are instructed that Defendant Meeker Housing Authority ("Defendant MHA") acts through its commissioners and employees.  Any act or omission of Defendant MHA's commissioners or employees while acting in the scope of the authority delegated to them is an act of Defendant MHA.

At all times pertinent to this case, the following individuals acted as commissioners of Defendant Meeker Housing Authority ("Defendant MHA"): Melinda Parker, Edy George, and Michelle Buckler.  (These three individuals are also referred to as "Board members.") The following individual acted as an employee of MHA:  Stacie Kincher.[1]  At all times pertinent to this case, these individuals were acting in the scope of the authority delegated to them by Defendant MHA.

---

[1] Model Final Jury Instructions (Civil), J. Christine Arguello (D. Colo.), Instruction No. 10; 3 Fed. Jury Prac. & Instr. § 103:31 (6th ed.); *Sprint Communications Vo., L.P. v. Theglobe.com, Inc.*, 236 F.R.D. 524, 528 (D. Kan. 2006); Colo. Jury Instr.-Civ. 8:23.

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 13 – LIST OF CLAIMS**

Plaintiffs Megan McFadden, A.J. White, and Lonnie White bring the following claims against Defendant:

1.  Disability Discrimination under the Fair Housing Act and Rehabilitation Act

2.  Retaliation under the Fair Housing Act and Rehabilitation Act

3.  Interference under the Fair Housing Act

4.  Failure to Return Security Deposit (only Plaintiff Megan McFadden)

Plaintiffs each bring two sets of retaliation and interference claims against Defendant.  Specifically, Plaintiffs allege that Defendant MHA retaliated against them and otherwise interfered with their rights after they made reasonable accommodation requests during the summer of 2016 by, in part, issuing them notices to vacate their units and threatening them with eviction.

Plaintiffs also allege that Defendant MHA retaliated against them and otherwise interfered with their rights after Plaintiffs filed the present lawsuit by, in part, subjecting them to harassing behavior and filing baseless or frivolous counterclaims against them.

You will be provided two sets of verdict forms for each Plaintiffs' retaliation and interference claims.  These sets of verdict forms will distinguish the retaliation and interference claims based upon whether the retaliation and interference took place prior to the filing of this lawsuit or after.

The following instructions will aid you in determining whether Plaintiffs have proven these claims by a preponderance of the evidence.  For each claim for relief, you may find in favor of one or more Plaintiff without finding in favor of all three Plaintiffs.

**Authority:** *See* CJI-Civ. 2:1 (2019).

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 14 – FHA OVERVIEW**

The Fair Housing Act prohibits housing providers from discriminating against applicants or residents because of their disability or the disability of anyone associated with them and from treating persons with disabilities less favorably than others because of their disability.

The Court has found as a matter of law that Defendant Meeker Housing Authority ("MHA") is a housing provider that must comply with the Fair Housing Act.  Therefore, you must accept as fact that Defendant is a housing provider that must comply with the Fair Housing Act for purposes of your deliberations in this case.

**Authority:**  42 U.S.C. § 3604(f)(2)(A) and (C); 42 U.S.C. § 3602(d); Joint Statement of the Department of Justice and the Department of Housing and Urban Development, May 17, 2004 at 2; *Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.*, 765 F.3d 1277, 1285 n.2 (11th Cir. 2014) (noting that "handicap" and "disability" can be used interchangeably); Order Granting in Part Plaintiffs' Motion for Partial Summary Judgment [ECF No. 443]; *see also* Third Circuit Pattern Instruction 9.0 (providing lengthy introductory instruction on the ADA); 3C Fed. Jury Prac. & Instr. § 169:160 (6th ed.) (providing a similar instruction in the context of race-based housing discrimination); 3C Fed. Jury Prac. & Instr. § 169:170 (providing similar instruction with more detail as to all types of conduct prohibited by FHA).

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 15 – REHABILITATION ACT OVERVIEW**

Section 504 of the Rehabilitation Act provides that no otherwise qualified individual with a disability shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

The Court has found as a matter of law that Defendant runs a program or activity receiving Federal financial assistance and is therefore required to comply with the Rehabilitation Act.  Therefore, you must accept as fact that Defendant is required to comply with the Rehabilitation Act for purposes of your deliberations in this case.

The Court has found as a matter of law that Plaintiffs are "otherwise qualified individuals" with disabilities, or associated with an individual with a disability, entitled to the protections of the Rehabilitation Act.  Therefore, you must accept as fact that Plaintiffs are entitled to the protections of the Rehabilitation Act for purposes of your deliberations in this case.

The terms "Section 504" and "the Rehabilitation Act" may be used interchangeably throughout this case and within these instructions.

**Authority:** 29 U.S.C. § 794; Order Granting in Part Plaintiffs' Motion for Partial Summary Judgment [ECF No. 443]; *see also* Third Circuit Pattern Instruction 9.0 (providing lengthy introductory instruction on the ADA); 3C Fed. Jury Prac. & Instr. § 169:160 (6th ed.) (providing a similar instruction in the context of race-based housing discrimination); 3C Fed. Jury Prac. & Instr. § 169:170 (providing similar instruction with more detail as to all types of conduct prohibited by FHA).

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 16 – DISABLED AS MATTER OF LAW**

The Court has found that Plaintiffs Megan McFadden and A.J. White are disabled as a matter of law under both the Fair Housing Act and the Rehabilitation Act. Therefore, you must accept as fact that Plaintiffs Megan McFadden and A.J. White are disabled for purposes of your deliberations in this case.

The Court has also found that Plaintiff Lonnie White is associated with a disabled person – his son A.J. White – as a matter of law under both the Fair Housing Act and the Rehabilitation Act. Therefore, you must accept as fact that Plaintiff Lonnie White is associated with a disabled person for purposes of your deliberations in this case.

**Authority:**  Order Granting in Part Plaintiffs' Motion for Partial Summary Judgment [ECF No. 443].

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 17 – RIGHT TO REASONABLE ACCOMMODATIONS UNDER THE FHA AND REHABILITATION ACT**

One type of disability discrimination prohibited by both the Fair Housing Act and the Rehabilitation Act is the refusal to make "reasonable accommodations" in rules, policies, practices, or services when such accommodations may be necessary to afford a person with a disability the equal opportunity to use and enjoy a dwelling.

A "reasonable accommodation" is a change, exception, or adjustment to a rule, policy, practice, or service that may be necessary for a person with a disability to have an equal opportunity to use and enjoy a dwelling, including public and common use spaces.

Neither the Rehabilitation Act nor the Fair Housing Act require that a request be made in a particular manner or at a particular time.

The Court has found as a matter of law that Plaintiffs Megan McFadden, A.J. White, and Lonnie White made requests for reasonable accommodation during the summer of 2016 and that Defendant Meeker Housing Authority failed to make the requested accommodations in violation of both the Fair Housing Act and the Rehabilitation Act.  Therefore, you must accept as fact that the Plaintiffs made requests for reasonable accommodations during the summer of 2016, and that Defendant Meeker Housing Authority failed to provide the requested accommodations in violation of both the Fair Housing Act and the Rehabilitation Act.

**Authority:**  42 U.S.C. § 3604(f)(3)(B); *Keys Youth Servs., Inc. v. City of Olathe, Kan.*, 248 F.3d 1267, 1275 (10th Cir. 2001); Joint Statement of the Department of Justice and the Department of Housing and Urban Development, May 17, 2004 at 1, 6-7, 10; *Tesh v. U.S. Postal Serv.*, 349 F.3d 1270, 1275 (10th Cir. 2003) (Rehabilitation Act); *Bronk v. Ineichen,* 54 F.3d 425, 429 (7th Cir. 1995); Order Granting in Part Plaintiffs' Motion for Partial Summary Judgment [ECF No. 443].

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 18 – DISABILITY DISCRIMINATION UNDER FHA AND REHABILITATION ACT AS A MATTER OF LAW**

Plaintiffs Megan McFadden, A.J. White, and Lonnie White claim that Defendant discriminated against them in violation of the Fair Housing Act and the Rehabilitation Act.

To state a claim of discrimination for failure to accommodate under either the Fair Housing Act or the Rehabilitation Act, the Plaintiffs must show that:

(1) the Plaintiff or someone associated with the Plaintiff is disabled;

(2) the Defendant knew or reasonably should have known of the claimed disability;

(3) the requested accommodation of the disability is necessary to afford the disabled person an equal opportunity to use and enjoy the dwelling;

(4) the accommodation is reasonable; and

(5) the Defendant refused to make such accommodation.

This Court has already ruled as a matter of law that each of the three Plaintiffs has successfully stated a claim of discrimination under both the Fair Housing Act and the Rehabilitation Act based upon Defendant's failure to accommodate. Therefore, you must accept as fact that Plaintiffs have proved each of these five elements and that Defendant violated the Fair Housing Act and the Rehabilitation Act by failing to accommodate Plaintiffs' disability-related needs.

**Authority:** *Dubios v. Ass'n of Apartment Owners of 2987 Kalakaua*, 453 F.3d 1175, 1179 (9th Cir.2006); Order Granting in Part Plaintiffs' Motion for Partial Summary Judgment [ECF No. 443]; *Arnal v. Aspen View Condo. Ass'n, Inc.*, 226 F. Supp. 3d 1177, 1183 (D. Colo. 2016); *see also Hollonbeck v. U.S. Olympic Comm.*, 513 F.3d 1191, 1194 (10th Cir. 2008). Note: Plaintiffs are using the term "disability" instead of "handicap" per our standard practice throughout this case, as the terms can be used interchangeably in the law and "disability" is the preferred term. *See Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.*, 765 F.3d 1277, 1285 n.2 (11th Cir. 2014).

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 19 – FHA AND REHABILITATION ACT RETALIATION ELEMENTS**

Plaintiffs Megan McFadden, A.J. White, and Lonnie White claim that Defendant retaliated against them in violation of the Fair Housing Act and the Rehabilitation Act.

The Fair Housing Act and Rehabilitation Act prohibit retaliation on account of a person having exercised or enjoyed fair housing rights, or on account of having aided or encouraged another person in the exercise or enjoyment of fair housing rights. Exercising or enjoying fair housing rights, or aiding or encouraging another person in the exercise or enjoyment of fair housing rights, is also referred to as engaging in "protected activity" or "protected conduct."

Making a reasonable accommodation request constitutes protected activity under the Fair Housing Act and the Rehabilitation Act. Bringing a lawsuit asserting rights under the fair housing laws also constitutes protected activity under the Fair Housing Act and the Rehabilitation Act.

In order to prevail on his or her claim, each Plaintiff must prove that:

(1) He or she engaged in protected activity, such as making a reasonable accommodation request or filing a lawsuit asserting their rights under the fair housing laws;

(2) He or she suffered a materially adverse action by Defendant either after or at the same time as he or she engaged in the protected activity; and

(3) There is a causal connection between Plaintiff engaging in the protected activity and the materially adverse action taken against him or her by Defendant

A materially adverse action is an action which affects the terms and conditions of a plaintiff's housing, or an action which might have dissuaded a reasonable person from attempting to assert their rights under the fair housing laws, such as serving notices to vacate in response to receiving a reasonable accommodation request or filing a baseless or frivolous lawsuit against an individual for engaging in protected activity.

A causal connection may be shown by evidence of circumstances that lead you to infer that Defendant was at least partially motivated by the desire to retaliate against Plaintiffs when it took an adverse action against them. Plaintiffs do not have to prove that unlawful retaliation was the sole reason Defendant subjected Plaintiffs to a materially adverse action. If you disbelieve the reasons Defendant has given for its decision, you may infer Defendant subjected Plaintiffs to a materially adverse action because they engaged in protected activity.

**Authority**:  42 U.S.C. § 3617; *Hwang v. Kansas State Univ.*, 753 F.3d 1159, 1165 (10th Cir. 2014) ("We've long explained that the Rehabilitation Act prohibits not just discrimination on the basis of disability but retaliation against those who report disability discrimination."); Order Granting in Part Plaintiffs' Motion for Partial Summary Judgment [ECF No. 443]; *Jarvis v. Potter*, 500 F.3d 1113, 1125 (10th Cir. 2007) (stating the test for retaliation claims under the Rehabilitation Act); 29 C.F.R. § 1614.101(b) ("No person shall be subject to retaliation for opposing any practice made unlawful by . . . the Rehabilitation Act . . . or for participating in any stage of . . . judicial proceedings under those statutes"); *Burlington N. & S.F. Ry. V. White*, 548 U.S. 53, 67-70 (2006) (holding that an actionable retaliation claim requires that "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination") (internal quotations omitted); *Lee v. McCreary*, No. 09-cv-2271, 2010 WL 925173, at *6 (N.D. Ga. Mar. 8, 2010) ("The FHA prohibits retaliation for an individual's exercise of rights guaranteed by the Act," which rights include "attempting to receive accommodations and for filing complaints"); *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1237 (10th Cir. 2004) (when "there is no direct evidence of retaliation, [courts] analyze a retaliation claim under the familiar burden-shifting framework set forth in *McDonnell Douglas*"); *Carlson v. Board of Educ. of the Albuquerque Pub. Schools*, No. 10-cv-01195-JCH-RHS, 2012 WL 3247362 (D.N.M.) ("A causal connection may be shown by evidence of circumstances that lead you to infer that Defendant was motivated by the desire to retaliate against Plaintiff when it took an adverse employment action against her. Plaintiff does not have to prove that unlawful retaliation was the sole reason Defendant did not renew her employment contract. If you disbelieve the reasons Defendant has given for its decision, you may infer Defendant did not renew Plaintiff's contract because she engaged in protected activity."); *Chavez v. Aber*, 122 F.Supp.3d 581, 596 (W.D. Tex. 2015) ("[S]ervice dogs are a common example of a reasonable accommodation for people with disabilities"); *id.* at 599 ("Retaliation claims brought pursuant to [§ 3617] are analyzed under the same standards that are applied to retaliation claims brought under Title VII and other employment discrimination statutes."); *id.* at 600 ("Protected activities [under the FHA] include the request for a reasonable accommodation"); *id.* at 600 ("Threats and intimidation after plaintiff filed a complaint of housing discrimination is direct evidence of retaliation in violation of the FHA" and constitutes a sufficient "adverse action" for a retaliation claim."); *Reinhardt v. Albuquerque Pub. Sch. Bd. of Educ.*, 595 F.3d 1126, 1131 (10th Cir. 2010) ("The standard for retaliation claims under the Rehabilitation Act is the same as the standard for retaliation claims under the Americans with Disabilities Act"); *Hidden Vill. LLC v. City of Lakewood, Ohio*, 734 F.3d 519, 528-29 (6th Cir. 2013) (a Fair Housing Act retaliation claim may be brought "on account of [] having aided or encouraged any other person in the exercise or enjoyment of [a fair housing right]");

*Walker v. City of Lakewood*, 272 F.3d 1114, 1124 (9th Cir. 2001) (finding that the defendant's "breach of contract claim against the [Fair Housing Foundation of Long Beach] may be considered a retaliatory action" giving rise to retaliation claims under the FHA) (citing *United States v. Wagner*, 940 F. Supp. 972, 978-80 (N.D. Tex. 1996) (holding that a lawsuit can be a retaliatory action giving rise to a § 3617 claim)); *Darveau v. Detecon Inc.*, 515 F.3d 334, 341-343 (4th Cir. 2008) (finding plaintiff could proceed on FLSA retaliation claim against former employer on grounds that the employer brought a meritless fraud suit against plaintiff in retaliation for his FLSA lawsuit); *E.E.O.C. v. Outback Steakhouse of Florida, Inc.*, 75 F. Supp. 2d 756, 758 (N.D. Ohio 1999) (noting that many courts have held that filing lawsuits not in good faith and motivated by retaliation provides basis for retaliation claims) (collecting cases); *Obester v. Lucas Assocs., Inc.*, No. 1:08-CV-3491-MHS/AJB, 2009 WL 10665749, at *3 (N.D. Ga. June 5, 2009) ("Bad faith or groundless counterclaims and other legal proceedings against employees who assert statutory rights are actionable retaliation precisely because of their 'in terrorem effect.'") (collecting cases); 24 C.F.R. § 100.400 (prohibiting retaliation "against any person because that person has made a complaint, testified, assisted, or participated in any manner in a proceeding under the Fair Housing Act.")

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 20 – FHA INTERFERENCE ELEMENTS**

Plaintiffs Megan McFadden, A.J. White, and Lonnie White also claim that Defendant engaged in unlawful interference in violation of the Fair Housing Act.

The Fair Housing Act prohibits interference with any person in the exercise or enjoyment of, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, rights protected by the Fair Housing Act.

To state a claim of interference under the Fair Housing Act, each Plaintiff must show that:

(1) He or she is a protected individual under the Fair Housing Act;

(2) He or she was engaged in the exercise or enjoyment of rights protected by the Fair Housing Act;

(3) Defendant was motivated in part by an intent to discriminate; and

(4) Defendant coerced, threatened, intimidated, or interfered with Plaintiff on account of his or her protected activity under the Fair Housing Act.

The Court has found as a matter of law that Plaintiffs are protected individuals under the Fair Housing Act.  Therefore, you must accept as true that Plaintiffs have proven the first element of their interference claims.

Exercising or enjoying fair housing rights is also referred to as engaging in "protected activity" or "protected conduct."  Making a reasonable accommodation request constitutes protected activity under the Fair Housing Act.  Bringing a lawsuit asserting rights under the fair housing laws also constitutes protected activity under the Fair Housing Act.

Intent to discriminate may be shown by evidence of circumstances that lead you to infer that Defendant was at least partially motivated by the desire to interfere with Plaintiffs' rights under the Fair Housing Act.  Plaintiffs do not have to prove that discrimination was the sole reason Defendant coerced, threatened, intimidated or interfered with Plaintiffs' rights under the Fair Housing Act.  If you disbelieve the reasons Defendant has given for its actions, you may infer that Defendant coerced, threatened, intimidated or interfered with Plaintiffs' rights under the Fair Housing Act because it was motivated by an intent to discriminate.

**Authority:** 42 U.S.C. § 3617; *Castellano v. Access Premier Realty, Inc.*, 181 F. Supp. 3d 798, 809 (E.D. Cal. 2016) ("The FHA makes it unlawful to . . . interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, . . . any right granted or protected [by the Fair Housing Act].") (internal quotations omitted); *id.* at 809 ("Interference has been broadly applied to reach all practices which have the effect of interfering with the exercise of rights under federal fair housing laws."); *Carrillo v. Romero*, 2013 WL 6133362, at *3 (D. Colo. Nov. 21, 2013) (stating the relevant four element test for interference under the Fair Housing Act); *Chavez v. Aber*, 122 F.Supp.3d 581, 596, 599-600 (W.D. Tex. 2015) ("Protected activities [under the FHA] include the request for a reasonable accommodation"); *Lee v. McCreary*, No. 09-cv-2271, 2010 WL 925173, at *6 (N.D. Ga. Mar. 8, 2010) (noting that [t]he Fair Housing Act prohibits interference of an individual's exercise of rights guaranteed by the Act, which rights include "attempting to receive accommodations and for filing complaints"); *Bloch v. Frischholz*, 587 F.3d 771, 786 ("A finding of discriminatory intent is usually based on circumstantial evidence") (internal quotations omitted); Order Granting in Part Plaintiffs' Motion for Partial Summary Judgment [ECF No. 443]; 24 C.F.R. § 100.400 (prohibiting retaliation "against any person because that person has made a complaint, testified, assisted, or participated in any manner in a proceeding under the Fair Housing Act.")

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 21 – DUTY TO RETURN SECURITY DEPOSIT**

Plaintiff McFadden has asserted a claim against Defendant MHA for return of a $50 security deposit under Colo. Rev. Stat. § 38-12-103.  In order for Plaintiff McFadden to recover on this claim, she must prove by a preponderance of the evidence that:

1.  Plaintiff McFadden paid a security deposit to Defendant MHA;

2.  Defendant MHA failed to return Plaintiff McFadden's security deposit within one month of the surrender and acceptance of her unit;

3.  Defendant MHA failed to provide a written statement to Plaintiff McFadden listing the exact reasons for retention of any portion of the security deposit during that one-month period;

4.  Ms. McFadden provided at least seven days' notice of her intent to file legal proceedings to secure the return of her security deposit;

5.  Upon receipt of such notice, Defendant MHA did not return Ms. McFadden's security deposit; and

6.  Defendant MHA's retention of the security deposit was willful.

"Willful" is defined as deliberately failing to return the security deposit during the 7-day notice period.

The parties do not dispute that Ms. McFadden has met the elements listed under Nos. 2-5.  However, the parties dispute whether Ms. McFadden ever paid a security deposit and whether the retention of the security deposit was willful.  Therefore, the only questions for you to decide are whether Ms. McFadden paid a $50 security deposit to Defendant MHA and whether Defendant MHA willfully retained the security deposit by failing to return it after receiving Ms. McFadden's notice of her intent to file legal proceedings.

**Authority:** C.R.S. § 38-12-103(1); *Mishkin v. Young*, 107 P.3d 393, 397 (Colo. 2005) ("We agree with both the county and district courts that the landlord's retention of $1,574.60 was willful because the landlord failed to return the entire security deposit within the seven-day period."); *Turner v. Lyon,* 189 Colo. 234, 237, 539 P.2d 1241, 1243 (1975) ("If the landlord deliberately fails to return the security deposit during the additional seven-day period, the retention is logically 'willful' under the Act.").

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 22 – DUTY TO DETERMINE DAMAGES**

If you find that Plaintiffs have proved by a preponderance of the evidence each element of any one or more of all of their claims, then you must determine the amount of compensatory damages to award.  Put another way, you must determine what constitutes fair compensation that would make each Plaintiff whole – that is, to compensate the Plaintiff for the damage he or she has suffered.

Compensatory damages are not limited to expenses that the Plaintiff may have incurred because of his or her injuries.  If Plaintiffs win, each Plaintiff is entitled to compensatory damages for any pain and suffering, mental anguish, or discomfort that he or she has suffered because of Defendant's conduct.  You may award compensatory damages only for injuries that Plaintiffs prove were caused by the Defendant's wrongful conduct.  The damages that you award must be fair compensation for all of the Plaintiffs' damages, no more and no less.

On the other hand, the law does not require that each Plaintiff prove the amount of his or her losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.  You must use sound discretion in fixing an award of damages, drawing reasonable inferences where you find them appropriate from the facts and circumstances in evidence.

Compensatory damages are not restricted to actual loss of time or money; they include both the mental and physical aspect of injury, tangible and intangible.  They are an attempt to make the Plaintiff whole, or to restore the Plaintiff to the position he or she would have been in if the discrimination, retaliation and/or interference had not happened.

You should consider the following elements of damages, to the extent you find that the Plaintiff has established such damages:

(1) financial losses;

(2) mental and emotional pain or suffering;

(3) physical and emotional distress;

(4) fear, anxiety, embarrassment, humiliation, impairment of the quality of life, and loss of reputation.

Some of these damages are intangible things about which no evidence of value is required.  In awarding these damages, you are not determining values, but you should award an amount that will fairly compensate each Plaintiff for his or her injuries.

**Authority:**  *Steele v. Title Realty Co.*, 478 F.2d 380, 384 (10th Cir. 1973) (holding that damages in housing discrimination cases may include an award for emotional distress and humiliation); *Gore v. Turner*, 563 F.2d 159, 164 (5th Cir. 1977); *Hodge v. Seiler*, 558 F.2d 284, 287 (5th Cir. 1977).

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 23 – NOMINAL DAMAGES**

If you find in favor of Plaintiffs but you find that the Plaintiffs' damages have no monetary value, then you must return a verdict for Plaintiffs in the nominal amount of one dollar.

Simply because you find that one or more Plaintiff's damages have no monetary value on one or more claim for relief does not preclude you from awarding the Plaintiff compensatory damages on other claims for relief.  It also does not preclude you from awarding the other Plaintiffs compensatory damages on any of their claims for relief.  You must determine the damages owed to each Plaintiff and on each claim of relief separately.

**Authority:** 3C Fed. Jury Prac. & Instr. §§ 103:13, 169:221 (6th ed.); *see also* CJI-Civ. 30:41 (2019).

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 24 – MULTIPLE RECOVERY PROHIBITED**

Each Plaintiff has sued for the some of the same damages on their claims for relief.  The claims for relief on which the Plaintiffs have sued and on which you have been instructed are:

1.  Disability Discrimination under the Fair Housing Act and Rehabilitation Act

2.  Retaliation under the Fair Housing Act and Rehabilitation Act

3.  Interference under the Fair Housing Act

4.  Failure to Return Security Deposit (only Plaintiff Megan McFadden)

If you find for Plaintiffs on more than one claim for relief, you may award them actual damages only once for the same injuries.

**Authority:**    CJI-Civ. 6:14 (2019)

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 25 – PERSONAL INJURY – NON-REDUCTION OF DAMAGES – "THIN SKULL" DOCTRINE**

In determining the amount of Plaintiffs' actual damages, you cannot reduce the amount of or refuse to award any such damages because of any mental condition of any Plaintiff that may have made him or her more susceptible to injury, disability, or impairment than an average or normal person.

Therefore, if you find in favor of one or more Plaintiffs on their claims for relief, Defendant is responsible for any and all damages resulting from its conduct. This is true regardless of whether one or more Plaintiffs suffered from a preexisting psychological condition that made the consequences of the Defendant's conduct more severe for the Plaintiff than they would have been for a person without the same condition.

**Authority:** CJI-Civ. 6:7 (2019); *Fox v. Pittsburgh State Univ.*, 257 F. Supp. 3d 1112, 1155 (D. Kan. 2017) (instructing the jury that "[i]f you find in favor of Plaintiff on either one of her claims of sexual harassment, Defendant is responsible for any and all damages resulting from that sexual harassment. This is regardless of whether Plaintiff suffered from a preexisting psychological condition that made the consequences of the sexual harassment more severe for Plaintiff than they would have been for a person without the same condition."); *see also Wren v. Spurlock*, 798 F.2d 1313, 1321 (10th Cir. 1986) (including an instruction regarding the aggravation of a preexisting condition or disability proximately resulting from defendant's conduct).

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 26 – ADVERSE INSTRUCTION**

During the course of this litigation, Defendant MHA proceeded improperly by sending a harassing letter regarding Plaintiffs and their attorneys to potential witnesses in the case.  The Court has found that the harassing letter was sent in bad faith. Therefore, you must accept as true that this letter was harassing and sent in bad faith.

You may consider the fact that Defendant sent a harassing letter in bad faith to potential witnesses as you would any other evidence in determining whether Defendant violated or intended to violate Plaintiffs' rights under the Fair Housing Act or the Rehabilitation Act.

**Authority:**     Order Sanctioning Defendants [ECF No. 323].